KEARSE, Circuit Judge:
 

 Appellant Monteo, Inc., appeals from an order of the United States District Court for the Southern District of New York, Mary Johnson Lowe,
 
 Judge,
 
 affirming an order of the bankruptcy court dated November 24, 1978 (“1978 Order”), that amended an order dated May 13, 1976 (“1976 Order”). The 1978 Order vacated so much of the 1976 Order as had authorized the debtor in possession, Emergency Beacon Corporation (“EBC” or “debtor”), to issue a certificate of indebtedness to Monteo for $275,000. The effect of a certificate of indebtedness is to give its holder priority status over general creditors.
 
 See
 
 8
 
 Collier on Bankruptcy
 
 ¶¶ 6.40[7]-[7.2], at 971-75 (14th ed. 1978). The result of the 1978 Order was to deny Montco’s claim for priority treatment based on the certificate. For the reasons below, we affirm.
 

 Background
 

 EBC was formed in 1968 by Stephen Glatzer and Rocco Scappatura to engage in the manufacture and sale of electronic equipment, primarily an emergency “S.O. S.” transmitter that Glatzer invented and that is now required equipment in all aircraft. Glatzer and Scappatura were, respectively, president and vice president of EBC and each owned 28% of the corporation’s stock. The two men subsequently had a falling out and in late 1974, Scappatu-ra became president of EBC. Glatzer held no further executive position with EBC but agreed to provide consultative services for which Glatzer was to receive $100,000 per year for two years.
 

 In the spring of 1975, EBC borrowed $275,000 from Monteo at an interest rate of 24% per annum. The loan was secured by EBC’s present and future accounts, contract rights, machinery, furniture, equipment, and inventory, and a second mortgage on its real estate.
 

 Events Leading to the 1976 Order
 

 On February 18, 1976, EBC filed a petition for an arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C. §§ 701-99 (1976). A creditors’ committee was appointed with Glatzer as chairman, and ap-pellee Harvey Barr was appointed stand-by trustee. In mid-March the debtor requested a special meeting of creditors to consider an offer that had been made to buy EBC’s airplane. Monteo timely filed an application stating that it did not object to the sale of the airplane, provided that Monteo would receive the proceeds from the sale in partial reduction of its secured loans. A special meeting of creditors was convened on April 16, 1976, before Bankruptcy Judge Howard Schwartzberg. The sale of the plane was approved without objection, and the payment requested in Montco’s application was approved on the condition that the proceeds from the sale would be held in escrow for up to thirty days to allow the creditors’ committee to determine whether Montco’s lien was valid.
 

 Following the completion of this and other properly-noticed business before the
 
 *756
 
 court, counsel for the debtor stated that there was also a motion before the court for authority “to make payments of interest to Monteo, Inc., to issue a certificate of indebtedness to Monteo” pursuant to § 344 of the Bankruptcy Act, 11 U.S.C. § 744 (1976).
 
 [1]
 
 The court stated that any such motion would be held “in abeyance because that’s going to be subject to question, also,” and ruled that no action on the matter was to be taken at least during the thirty-day period during which the creditors’ committee was entitled to challenge the validity of Montco’s lien. Counsel for the creditors’ committee asked what consideration was to be given for the requested “paying of security interest in all the debtor in possession assets.” Counsel for the debtor responded that “[i]t’s a forebearance [sic] of the secured creditor from foreclosing its security interest.” The court immediately questioned this in light of Rule 11-44 of the Rules of Bankruptcy Procedure (“Bankruptcy Rules”), which provides that the filing of a Chapter XI petition effects an automatic stay of actions against the debtor and of enforcement of liens against it, and provides further that relief from the stay may be obtained from the bankruptcy court only “for cause shown.”
 
 [2]
 
 Counsel for the debtor asserted that Montco’s promise provided consideration notwithstanding Rule 11-44 because it assured forbearance not only from foreclosure on the security interest but also from institution of “an adversary proceeding to lift the statutory restraint on the foreclosure of this security interest.” The court declined to rule on the request for a certificate of indebtedness to be issued for this kind of consideration. The court did state, however that if Mont-co’s lien was valid it would be entitled to the requested interest payments, to which Montco’s counsel responded, “That’s all I ask.”
 

 On May 13, 1976, the thirtieth day after the hearing, the debtor’s counsel submitted a proposed order to the bankruptcy court. The first paragraph of the proposed order authorized EBC to pay Monteo the interest payments. The proposed order went on, however, to authorize the issuance to Mont-eo of a certificate of indebtedness in the amount of $275,000, and stated that the certificate
 

 shall be a lien upon all the property of the Debtor and Debtor-in-Possession, subject only to prior and valid liens of record, and shall have priority in payment over all obligations of the Debtor-in-Possession herein, subject only to the cost and expenses of administration.
 

 There was no opposition to the proposed order and it was signed on the day it was submitted. This is the 1976 Order that was
 
 *757
 
 to be modified by the bankruptcy court m 1978.
 

 The Undoing of the 1976 Order
 

 Led by Scappatura, EBC continued in business as a debtor in possession until March 11,1977, when an order was entered, with EBC’s consent, adjudicating the corporation bankrupt and appointing Barr as trustee in bankruptcy. Shortly thereafter, at a meeting of EBC’s shareholders, Glatzer was elected president and was authorized by the new management to reinstitute Chapter XI proceedings. The petition was filed and accepted on April 29,1977, and the Chapter XI proceedings were reinstated as of that date. Barr, the trustee in bankruptcy, was retained as trustee in possession pursuant to § 342 of the Bankruptcy Act, 11 U.S.C. § 742 (1976) and Bankruptcy Rule ll-18(b). As trustee in possession, he turned over to Monteo all the property covered by the security agreement in response to Montco’s application for a turnover. This property was sold at public auction for $41,636.25.
 

 Led by Glatzer, EBC continued to do business profitably and in February 1978 its proposed plan of arrangement was accepted by the requisite majority of creditors. On May 9,1978, however, Monteo filed its proof of claim for $217,363.75, together with interest at 24% per annum from November 1, 1977, and demanded that payment of its claim be given priority over payments to any other creditors on the basis of the certificate of indebtedness which had been issued pursuant to the 1976 Order.
 

 The trustee objected to Montco’s claim, contending that the certificate of indebtedness had been issued without consideration and that the 1976 Order had been procured without full disclosure to the court. After an evidentiary hearing the bankruptcy court upheld the trustee’s objection. The bankruptcy judge found that there had been no proper application for the issuance of the certificate, that the question of such a certificate had never been submitted to the creditors’ committee, that the court had held no hearing on the merits of such an application, that no cause had been shown for the issuance of such a certificate, and that there had been, therefore, no basis for counsel to have inserted provision authorizing such a certificate in his proposed order which the court signed as the 1976 Order. The judge further indicated that he was unlikely to have approved a promise of forbearance as consideration for the granting of a certificate. Observing that Monteo had not, in the interim, changed its position in reliance on the certificate, the court concluded that the equities did not favor the granting of priority status to Monteo. Accordingly, the court entered the 1978 Order, amending the 1976 Order to delete those provisions that had authorized the issuance of a certificate of indebtedness and stating that Montco’s claim in excess of its secured position was not to be treated as an administrative priority as a result of the certificate.
 

 Monteo appealed the 1978 Order to the district court. Judge Lowe affirmed, holding that Judge Schwartzberg had correctly concluded that he had erred in signing the 1976 Order and had correctly determined that, as no rights of Monteo would thereby be prejudiced, the 1976 Order could be modified.
 

 This appeal followed.
 

 DISCUSSION
 

 On appeal Monteo challenges both the merits of the 1978 Order and the jurisdiction of the bankruptcy court to enter such an order. We find neither challenge meritorious.
 

 A.
 
 The Power of the Bankruptcy Court to Modify the 1976 Order
 

 Monteo contends, first, that whether or not the 1976 Order was improperly entered by the bankruptcy court in May 1976, the court lacked jurisdiction to grant a motion to vacate parts of the order more than two years later. Relying chiefly on Bankruptcy Rules 801 and 802, Monteo argues principally that since the 1976 Order was not appealed within ten days of its entry, it became final and immutable at that time. The district court and the bankruptcy court rejected this argument on the ground that a bankruptcy court may revoke or vacate an
 
 *758
 
 earlier order subsequently deemed improper at any time “so long as there are no vested intervening rights,” relying on
 
 Pfister v. Northern Illinois Finance Corp.,
 
 317 U.S. 144, 63 S.Ct. 133, 87 L.Ed. 146 (1942);
 
 Wayne United Gas Co. v. Owens-Illinois Glass Co.,
 
 300 U.S. 131, 57 S.Ct. 382, 81 L.Ed. 557 (1937); and
 
 Otte v. Manufacturers Hanover Commercial Corp. (In re Texlon Corp.),
 
 596 F.2d 1092 (2d Cir. 1979). We agree with this result in light of the powers granted the bankruptcy judge by Bankruptcy Rule 924.
 

 The finality of an order of the bankruptcy court is governed by Bankruptcy Rule 803 which provides that: “[ujnless a notice of appeal is filed as prescribed by Rules 801 and 802, the judgment or order of the referee shall become final.” Rule 802 provides that a notice of appeal must be filed with the bankruptcy court “within 10 days of the date of the entry of the judgment or order appealed from,” or, by leave of the court, within thirty days of such entry. The failure to file a timely notice of appeal affects the jurisdiction of a reviewing court to consider the bankruptcy court’s judgment or order.
 
 Ramsey v. Ramsey,
 
 612 F.2d 1220, 1222 (9th Cir. 1980);
 
 Berger v. Rodman (In re W. T. Grant Co.),
 
 425 F.Supp. 565, 567-69 (S.D.N.Y.1976),
 
 aff’d mem.
 
 559 F.2d 1206 (2d Cir. 1977).
 

 The amenability of a final order to modification by the bankruptcy court itself, however, is governed by Bankruptcy Rule 924, which incorporates Fed.R.Civ.P. 60.
 
 [3]
 
 With two exceptions not relevant here, Bankruptcy Rule 924 invests a bankruptcy judge with the full discretion possessed by a district court judge considering a motion under Fed.R.Civ.P. 60 for relief from a final judgment or order.
 
 [4]
 
 The pertinent portion of Federal Rule 60 is the part of subsection (b) that reads as follows:
 

 On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation.
 

 The trustee contends that the bankruptcy court was empowered to act under Rule 60(b)(6). It is established, however, that relief under clause (6) is not available unless the asserted grounds for relief are not recognized in clauses (1)-(5).
 
 See United States v. Cirami,
 
 563 F.2d 26, 32 (2d Cir.
 
 *759
 
 1977); 7 Moore’s Federal Practice ¶ 60.27[1], at 348-47 (2d ed. 1979). Monteo contends, without particularization, that clause (1), (2), or (3), providing relief, respectively, on grounds of mistake, newly discovered evidence, or fraud, is the appropriate provision. It points out that relief under any of these clauses must be sought within one year, at most, of the entry of the order, and argues that the trustee’s 1978 attack on the 1976 Order was untimely.
 
 [5]
 
 In the circumstances of the present case, we conclude that the one-year limitation was not applicable because clause (2) is patently inapposite, and the circumstances do not support invocation of clauses (1) or (3).
 

 Clause (1) provides for relief from mistake, inadvertence, surprise, or excusable neglect. Generally this provision has been invoked to remedy the mistake of a party or his representatives.
 
 See
 
 7 Moore’s Federal Practice,
 
 supra,
 
 ¶¶ 60.22[2]-[3], Although the language of the current Rule 60(b)(1) is broad enough to encompass errors by the court,
 
 [6]
 
 the authorities are divided as to whether it is properly so interpreted.
 
 See id.
 
 ¶ 60.22[3]; 11 C. Wright & A. Miller,
 
 Federal Practice and Procedure
 
 § 2858, at 176-80 (1973). Whether or not clause (1) is available to remedy typical types of errors of the court, we do not believe that in the unusual circumstances here the bankruptcy court’s action is a “mistake” envisioned by clause (1). In signing the 1976 Order the court did not err as to the facts — it made no findings of fact; and it did not err as to the law since it reached no conclusions of law. Nor could the inclusion of authorization for the certificate of indebtedness be termed merely a clerical error. In short, because the court simply did not intend to authorize such a certificate, we conclude that these were extraordinary circumstances making clause (6) more applicable than clause (1).
 

 Clause (3) provides for relief from fraud, misrepresentation or other misconduct of an adverse party. Ordinarily clause (3) is invoked where material information has been withheld or incorrect or perjured evidence has been intentionally supplied.
 
 See
 
 7 Moore’s Federal Practice,
 
 supra,
 
 ¶ 60.24[5]. In the present case the trustee did not seek to prove that he or the creditors had been defrauded, but contended rather that the 1976 Order had been procured on the basis of misstatements to the court. Since the bankruptcy court did not find that a fraud had been proven in the sense that information was withheld or misstated, clause (3) seems inapplicable. Even had such a fraud been proven, however, Montco’s cause would not be helped. Despite the general one-year limitation for motions made on this basis, Rule 60(b) provides that “[t]his rule does not limit the power of a court ... to set aside a judgment for fraud upon the court.” Thus, if fraud on the court was the basis for the trustee’s motion, the one-year limitation was inapplicable.
 
 See
 
 7 Moore’s Federal Practice,
 
 supra,
 
 ¶ 60.16[5], at 89;
 
 id.
 
 ¶ 60.33.
 

 Clause (6), on the other hand, providing that relief may be granted for “any other reason justifying relief from the operation of the judgment, seems quite apposite. This portion of Rule 60(b) is properly invoked when there are extraordinary circumstances,
 
 Ackermann v. United States,
 
 340 U.S. 193, 199, 71 S.Ct. 209, 212, 95 L.Ed. 207 (1950);
 
 see United States v. Cirami, supra,
 
 563 F.2d at 32, or where the judgment may work an extreme and undue hardship,
 
 see United States v. Karahalias,
 
 205 F.2d 331, 333 (2d Cir. 1953). Certainly the circumstances in the present case were extraordinary. As the bankruptcy court found in 1978, no application for authorization to issue a certificate of indebtedness was ever properly before the court. Rather, a request to issue such a certificate was made orally at the tag end of a hearing on other matters and in tandem with a motion
 
 *760
 
 to make interest payments, as EBC’s counsel stated: “There is also a motion for authority to the debtor in possession to make payments of interest to Monteo, Inc., to issue a certificate of indebtedness to Monteo.” The court refused to authorize a certificate, and, indeed Monteo itself seemed to be asking only for an order relating to interest payments:
 

 THE COURT: If the lien is valid the secured creditor is entitled to that interest.
 

 MR. FOGELSON [Attorney for Mont-eo]: That’s all I ask.
 

 Further, at that time the court expressed its skepticism as to the appropriateness of issuance of a certificate since the only consideration offered was a forbearance from foreclosing liens or initiating proceedings. No hearing was held, either then or later, at which the court could have ruled on that question; there was therefore, as the court found, no basis for the insertion of such provisions in the proposed order; and quite clearly the court did not intend to authorize issuance of a certificate. These extraordinary circumstances were quite adequate for the invocation of Rule 60(b)(6).
 

 Since clause (6) was applicable, the only temporal restriction on the trustee’s motion was that it be made within a “reasonable” time. Monteo naturally argues that the more than two-year interval could not possibly be considered reasonable. What qualifies as a reasonable time, however, will ordinarily depend largely on the facts of a given case, including the length and circumstances of the delay and the possibility of prejudice to the opposing party. 7 Moore’s Federal Practice,
 
 supra,
 
 ¶ 60.27[3], at 380. 11 C. Wright & A. Miller,
 
 Federal Practice and Procedure, supra,
 
 § 2866.
 
 See United States v. Karahalias, supra
 
 (motion to vacate default decree in denaturalization proceeding granted seventeen years after entry of the decree).
 

 In the present case some twenty-six months elapsed between the 1976 Order and the trustee’s challenge to it. For nearly a year at the start of that period, the trustee was only a stand-by trustee and was therefore not closely involved with the bankruptcy proceedings that were taking place. The bankruptcy court noted also that neither Glatzer, chairman of the creditors’ committee, nor co-counsel for the committee had been served with a copy of the proposed order. While such notice was not required, since the application for a certificate of indebtedness may be made ex parte, the lack of notice is an appropriate consideration in evaluating the reasonableness of the time at which the motion to vacate was made. Further, Monteo delayed filing its proof of claim until May 9, 1978. The trustee timely served his objection to Montco’s claim, challenging the issuance of the certificate of indebtedness within three months of Montco’s filings. Finally, Mont-eo does not appear to have been prejudiced by the delay. The bankruptcy court found that “since no one took any irreversible position upon [the certificate’s] issuance, it can safely be said that there are no vested intervening rights” between May 1976 and November 1978. In all the circumstances we are unable to say that the trustee’s motion was not made within a reasonable time.
 

 Consequently, we conclude that the bankruptcy court had the power under Rule 60(b)(6), as incorporated in Bankruptcy Rule 924, to modify its 1976 Order.
 

 B.
 
 The Merits of the Modification
 

 A motion under Rule 60(b) is addressed to the sound discretion of the trial court and this discretion “is especially broad under subdivision (6), because relief under it is to be granted when ‘appropriate to accomplish justice.’ ”
 
 International Controls Corp. v. Vesco,
 
 556 F.2d 665, 670 (2d Cir. 1977)
 
 (quoting Klapprott v. United States,
 
 335 U.S. 601, 615, 69 S.Ct. 384, 390, 93 L.Ed. 266 (plurality opinion per Black, J.),
 
 modified on other grounds,
 
 336 U.S. 942, 69 S.Ct. 398, 93 L.Ed. 1099 (1949)).
 
 See
 
 C. Wright & A. Miller,
 
 Federal Practice and Procedure, supra,
 
 § 2864, at 211-13; 7 Moore’s Federal Practice,
 
 supra,
 
 ¶ 60.27[2], at 352-53. Appellate review of a decision to grant or deny relief under this rule is therefore restricted to determining whether the court abused its discretion. 11 C. Wright & A. Miller,
 
 supra,
 
 § 2857, at 158. We find no such abuse.
 

 
 *761
 
 Section 344 of the Bankruptcy Act provides that a certificate of indebtedness may be issued by a bankruptcy court at any point in a Chapter XI proceeding “upon cause shown” for “cash, property, or other consideration approved by the court.” 11 U.S.C. § 744 (1976). A certificate of indebtedness grants the holder a priority claim over all unsecured obligations as well as over some existing secured obligations.
 
 Id. See
 
 8 Collier on Bankruptcy,
 
 supra,
 
 ¶ 6.40[7.2], The “cause” requirement for a certificate implies more than merely that the estate should obtain some benefit in return for granting the certificate:
 

 Section 344 ... essentially contemplates transactions of an unusual character, although not actually limited to such. In general there should appear both benefit to the estate by the issuance of the certificates, and necessity for their issuance because the consideration to be acquired therewith cannot be acquired by an ordinary credit transaction.
 

 Id.
 
 ¶ 6.40[4] (footnote omitted).
 
 See In re Alan Wood Steel Company,
 
 437 F.Supp. 949, 951 (E.D.Pa.1977). The nature of the consideration for which a certificate may be issued is virtually unrestricted; although it will normally be in form of cash or property, it may consist of work, labor, services, or any other consideration. 8 Collier,
 
 supra,
 
 ¶ 6.40[5]. Whatever the consideration, it must be specifically approved by the court, in order to safeguard the interests of the creditors and the estate.
 
 Id.
 
 Whether or not there has been a showing of “cause” warranting the court’s approval of the proposed consideration is a question that is left to the discretion of the bankruptcy court.
 
 In re Alan Wood Steel Company, supra,
 
 437 F.Supp. at 951.
 

 Within this legal framework the decision to modify the 1976 Order was not an abuse of discretion. Because of the nature of the consideration offered, which the court believed was legally insufficient, and because of the court’s belief that Montco’s promise to forbear was probably worthless to the debtor, the court would have been well within its discretion to deny even a proper application for the issuance of a certificate. Given the procedural defects discussed earlier, and given the bankruptcy judge’s finding that he never intended to authorize this certificate,
 
 [7]
 
 together with his findings that Monteo had not relied to its detriment and that the equities therefore did not favor the preferential promotion of Montco’s claim, the decision to vacate so much of the 1976 Order as authorized the certificate, was an equally appropriate exercise of discretion to accomplish justice.
 

 CONCLUSION
 

 The order of the district court, affirming the 1978 Order of the bankruptcy court, is affirmed.
 

 [1]
 

 . Section 344 states as follows:
 

 During the pendency of a proceeding for an arrangement, or after the confirmation of the arrangement where the court has retained jurisdiction, the court may upon cause shown authorize the receiver or trustee, or the debt- or in possession, to issue certificates of indebtedness for cash, property, or other consideration approved by the court, upon such terms and conditions and with such security and priority in payment over existing obligations as in the particular case may be equitable.
 

 [2]
 

 . Bankruptcy Rule 11-44 provides in pertinent part as follows:
 

 (a) Stay of Actions and Lien Enforcement
 

 A petition filed under Rule 11-6 or 11-7 [Chapter XI petition for reorganization] shall operate as a stay of the commencement or the continuation of any court or other proceeding against the debtor, or the enforcement of any judgment against him, or of any act or the commencement or continuation of any court proceeding to enforce any lien against his property, or of any court proceeding, except a case pending under Chapter X of the Act, for the purpose of the rehabilitation of the debtor or the liquidation of his estate.
 

 * * * * * *
 

 (d) Relief from Stay
 

 Upon the filing of a complaint seeking relief from a stay provided by this rule, the bankruptcy court shall, subject to the provisions of subdivision (e) [concerning ex parte relief from a stay] of this rule, set the trial for the earliest possible date, and it shall take precedence over all matters except older matters of the same character. The court may, for cause shown, terminate, annul, modify or condition such stay. A party seeking continuation of a stay against lien enforcement shall show that he is entitled thereto.
 

 [3]
 

 . Bankruptcy Rule 924 provides as follows:
 

 Rule 60 of the Federal Rules of Civil Procedure applies in bankruptcy cases, except that a motion to reopen a case or for the reconsideration of an order allowing or disallowing a claim against the estate entered without a contest is not subject to the one year limitation herein prescribed. This rule does not permit extension of the time allowed by § 15 of the Act for the filing of a complaint to revoke a discharge.
 

 [4]
 

 . Bankruptcy Rule 924 was adopted in 1973, and the notes of the Advisory Committee on Bankruptcy Rules stated that “[e]xcept for motions to reopen cases and to reconsider uncontested orders of allowance and disallowance of claims, the limitations prescribed by Rule 60(b) on the availability of relief by motion from a judgment or order are now entirely appropriate in bankruptcy cases.” Even prior to the adoption of Rule 924, this Court had looked to Federal Rule 60 to inform our decisions concerning motions for relief from bankruptcy judgments or orders after the running of the ten-day period as currently found in Bankruptcy Rules 801-03 and previously found in § 39(c) of the Bankruptcy Act, 11 U.S.C. § 67(c) (1976).
 
 See Grand Union Equipment Co. v. Lippner,
 
 167 F.2d 958 (2d Cir. 1948).
 

 [5]
 

 . We find no merit in Montco’s complaint that the trustee’s request for relief from the order was in the form of a collateral attack rather than a direct motion. The trustee’s objection to Montco’s claim, seeking a hearing on the grounds for his objection, was the practical equivalent of a motion to vacate the relevant portions of the 1976 Order.
 

 [6]
 

 . In its original form Rule 60(b) provided that a party could obtain relief on the basis of “his mistake.” One of the revisions of the rule in 1946 deleted the word “his.”
 

 [7]
 

 . Nothing in the record undermines Judge Schwartzberg’s finding that he never intended to authorize the issuance of the certificate of indebtedness, and we are bound to accept it.
 
 See
 
 Queens Boulevard Wine &
 
 Liquor Corp. v. Blum,
 
 503 F.2d 202 (2d Cir. 1974); Rules Bankr.Proc. Rule 810.