**In re EMERGENCY BEACON CORPORATION, Debtor.**

Nos. 76 B 356, 77 B 980.

United States District Court, S.D. New York.

April 16, 1985.

Kronish, Lieb, Shainswit, Weiner & Hellman, New York City, for Montmartco, Inc.; Laurence J. Kaiser and Karen M. Klein, New York City, of counsel.

Harvey S. Barr, Spring Valley, N.Y., for trustee.

Stephen G. Glatzer, New Rochelle, N.Y., pro se.

## DECISION ON MOTION TO REVOKE CONFIRMATION

HOWARD SCHWARTZBERG, Bankruptcy Judge.

This controversy between the Chapter XI debtor, Emergency Beacon Corporation ("EBC") and its creditor, Montmartco, Inc. ("Montmartco"), is but one in a long series of continued feuding which commenced nine years ago when EBC filed with this court its original petition for an arrangement under Chapter XI of the now repealed Bankruptcy Act. Montmartco now moves to vacate and set aside this court's confirmation order, dated March 30, 1984, on the grounds that (1) the confirmation order and its consummation are invalid, void and without legal effect under New York law, (2) the amended plan of arrangement con-

firmed by the confirmation order was not validly approved by the creditors and (3) the plan contains impermissible provisions affecting shareholders. Montmartco's motion to vacate is predicated on Bankruptcy Rule 924 and the general equity powers expressed in Rule 60(b)(4) and (6) of the Federal Rules of Civil Procedure.

## BACKGROUND

On February 18, 1976, EBC filed with this court its original petition for an arrangement under Chapter XI of the former Bankruptcy Act of 1898. EBC continued in business as a debtor in possession until March of 1977, when an order was entered adjudicating the debtor bankrupt. In April of 1977, after EBC underwent a change in management, it filed with this court a petition to reinstitute the Chapter XI case, which was accepted. The trustee in bankruptcy then continued to act as a trustee in possession pursuant to § 332 of the former Bankruptcy Act during the phoenix-like emergence of EBC in the reinstated Chapter XI case.

In 1975, Montmartco advanced the sum of $275,000 to EBC when EBC was under the control of its previous management, with interest at the rate of 24% per annum. This loan was secured by EBC's present and future accounts, contract rights, machinery, furniture, equipment, inventory and a second mortgage on EBC's real estate. After EBC filed its Chapter XI petition in 1976, an order was submitted to this court which contained a decretal paragraph authorizing the issuance of a certificate of indebtedness to Montmartco, which this court had previously refused to grant. The *ex parte* order was signed without objection by any parties in interest. After the adjudication and subsequent reinstatement of the Chapter XI case by EBC's new management, the trustee in possession successfully established under Rule 60(b)(6) of the Federal Rules of Civil Procedure that extraordinary circumstances existed for vacating the portion of the order authorizing the issuance of the certificate of indebtedness that Montmartco improperly acquired.

This court's order vacating the certificate of indebtedness was affirmed by the District Court and by the Second Circuit Court of Appeals. *In the Matter of Emergency Beacon Corp.*, 666 F.2d 754 (2d Cir.1981). Montmartco was permitted by the trustee in possession to liquidate the collateral to which it was properly entitled, with the result that Montmartco now holds an unsecured general deficiency claim of $147,-293.33. However, Montmartco's claim that its security interest included the debtor's patent rights, tradename and customer lists was rejected by this court. *In re Emergency Beacon Corp.*, 23 U.C.C.Rep. Serv. (Callaghan) 766 (Bkrtcy.S.D.N.Y. 1977). This decision was thereafter affirmed by the District Court, 78 Civ. 795 (S.D.N.Y. September 22, 1978) (mem.).

On March 30, 1984, EBC's plan of arrangement, dated December 1, 1977, as amended in March of 1984, was confirmed by this court. The plan provides that each creditor shall receive a total of 10.5¢ on each dollar of unsecured debt, in seven equal annual installments of 1.5% each, the first installment commencing twelve months after the date the order of confirmation was signed. This amended plan differed from the original plan, where the seven installments were to commence twelve months after the date the arrangement was accepted. Apparently EBC contemplated that confirmation would promptly follow acceptance of the plan and did not appreciate that confirmation would have to await the outcome of the series of legal skirmishes that EBC had to engage in with Montmartco. Under the confirmed amended plan each unsecured creditor is to receive one share of common stock of EBC for each $10 of debt. EBC is to pay on each share an annual dividend amounting to 5% of the gross annual sales of the corporation divided by the total number of outstanding shares. The confirmed order states that the trustee in possession shall no sooner than 120 days and no later than 180 days from the date of the order issue and forward the stock certificates.

## DISCUSSION

### Revocation Of A Confirmed Plan

■ Section 386 of the former Bankruptcy Act, 11 U.S.C. § 786, provides that a bankruptcy court may set aside or modify an arrangement if, upon the application of parties in interest filed within six months after an arrangement has been confirmed, it appears that the arrangement was fraudulently procured and that the petitioners had no knowledge of such fraud at the time of the confirmation. Former Rule 11–41 tracks § 386 and specifies the procedure to be followed by a party in interest who seeks to revoke a confirmation as procured by fraud. Thus, a party in interest who does not comply with the six-month limitation period for motions to revoke a fraudulently procured Chapter XI plan, may not look to F.R.Civ.P. 60(b) to set aside the confirmation order because

> the language of section 386 and Rule 11–41, the underlying policies of reasonable expedition and finality and a consistent body of precedent, all require the conclusion that those provisions are intended to be *the exclusive means* for obtaining revocation of a confirmed plan of arrangement for fraud and that, notwithstanding the court's traditional equitable powers or the powers conferred by Rule 60(b), strict compliance with the six month limitation period is a prerequisite to relief.

*In re Newport Harbor Associates*, 589 F.2d 20, 23–24 (1st Cir.1978) (emphasis added) (footnote omitted). The First Circuit Court of Appeals in the *Newport* case noted that parties who may have been injured by fraud are not without other remedies in other forums, citing *Bizzell v. Hemingway*, 548 F.2d 505 (4th Cir.1977), which indicated that an action for damages or other relief, based on federal securities law or common law fraud, may be available in the federal or state courts.

■ Although § 386 may be the exclusive means for attacking a confirmed Chapter XI plan for fraud, there is presented for consideration in this case the issue as to whether a party in interest may assert other grounds for revocation and thereby avoid the narrowly drawn statute by invoking the court's equitable powers authorized under F.R.Civ.P. 60(b). A confirmation of an arrangement is tantamount to a final judgment. *Bizzell v. Hemingway*, 548 F.2d at 507. Equitable relief from final judgments is expressly preserved by F.R. Civ.P. 60(b). 11 C. Wright & A. Miller, Federal Practice and Procedure § 2868 (1973). Former Bankruptcy Rule 924, which applies to Chapter XI cases, grants to the bankruptcy judge the discretionary power to consider a motion under F.R. Civ.P. 60(b) for relief from a final judgment or order. Hence, Montmartco reasons that this court is empowered under F.R.Civ.P. 60(b)(4) and (6) to revoke the March 30, 1984 confirmation order because it allegedly is invalid and void based on the claims that (1) the arrangement provides for the debtor's issuance of stock in violation of the New York Business Corporation Law; (2) there was no finding that the amended plan did not materially and adversely affect the interests of the creditors; and (3) the plan contains impermissible provisions affecting shareholders. In the light of these asserted grounds for relief, Montmartco seeks a revocation of the confirmed Chapter XI arrangement under subsections (4) and (6) of F.R.Civ.P. 60(b) which provide in part as follows:

> On Motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: ... (4) the judgment is void; ... or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time.... A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation.

The finality of a confirmed Chapter XI arrangement is expressed in § 367(1) of the former Bankruptcy Act as follows:

> Sec. 367. Upon confirmation of an arrangement—

(1) the arrangement and its provisions shall be binding upon the debtor, upon any person issuing securities or acquiring property under the arrangement and upon all creditors of the debtor, whether or not they are affected by the arrangement or have accepted it or have filed their claims, and whether or not their claims have been scheduled or allowed and are allowable.

Underlying the concept of finality with respect to confirmed Chapter XI arrangements is the basic principle that business rehabilitation is the goal and that economic rehabilitation may be achieved only when there exists a certainty for future business planning. *See In re Newport Harbor Associates,* 589 F.2d at 22. In order to foster this climate of business certainty, Congress prescribed the grounds for setting aside or modifying a Chapter XI plan of arrangement after it has been confirmed. As expressed in § 386 of Chapter XI under the former Bankruptcy Act, fraud in the procurement is the only recognizable ground for setting aside or modifying the confirmed arrangement. The provisions of § 386 of the former Bankruptcy Act were patterned from previous § 13 of the Bankruptcy Act of 1898.[1] The Second Circuit Court of Appeals has held that where a composition had been confirmed, former § 13 set forth the only grounds for setting aside an order confirming a composition and that the court did not have discretionary equitable power to set it aside on other grounds. *In re Isidor Klein, Inc.,* 22 F.2d 906, 910 (2d Cir.1927); *In re Mirkus,* 289 F. 732, 734 (2d Cir.1923). Also instructive, but not controlling, § 1144 of the Bankruptcy Reform Act of 1978, 11 U.S.C. § 1144, which is derived from § 386 of the former Bankruptcy Act, provides that if an order of confirmation was procured by fraud, the court may revoke the order on request of a party in interest if the request is made before 180 days after the entry of the order of confirmation. Bankruptcy Rule 9024, which is derived from former Rule 924, similarly makes F.R.Civ.P. 60 applicable under the Bankruptcy Code.[2] However, Rule 9024 expressly provides

a complaint to revoke an order confirming a plan may be filed only within the time allowed by § 1144 or § 1330.

The Advisory Committee Note to Bankruptcy Rule 9024 states that the time period established by § 1144 of the Code may not be circumvented by the invocation of F.R.Civ.P. 60(b). 11 U.S.C.A. Rule 9024 advisory committee note (West Supp.1983). Moreover, in discussing revocation of confirmations under Chapter 11 of the Bankruptcy Code, 3 W. Norton, Bankruptcy Law and Practice § 65.09 (1981) states:

Fraud is the sole ground for revoking a confirmation.

This point was made explicit under the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98-353, when § 1144 was amended by adding that an order of confirmation may be revoked "if and only" if procured by fraud.[3] Ac-

---

**1.** Section 13 of the Bankruptcy Act of 1898 provided:

"The judge may, upon the application of parties in interest filed at any time within six months after a composition has been confirmed, set the same aside and reinstate the case if it shall be made to appear upon a trial that fraud was practiced in the procuring of such composition, and that the knowledge thereof has come to the petitioners since the confirmation of such composition."

Ch. 541, § 13, 30 Stat. 544, 550, *amended by* § 386 of the Chandler Act of 1938, ch. 575, § 386, 52 Stat. 840, 913-14.

**2.** "Rule 60 F.R.Civ.P. applies in cases under the Code except that (1) a motion to reopen a case under the Code or for the reconsideration of an order allowing or disallowing a claim against the estate entered without a contest is not subject to the one year limitation prescribed in Rule 60(b), (2) a complaint to revoke a discharge in a chapter 7 liquidation case may be filed only within the time allowed by § 727(e) of the Code, and (3) a complaint to revoke an order confirming a plan may be filed only within the time allowed by § 1144 or § 1330."

**3.** "§ 1144. *Revocation of an order of confirmation.* On request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing, the court may revoke such order if and only if such order was procured by fraud. An order under this section revoking an order of confirmation shall—

cordingly, Congress removed any doubt that fraud is the sole ground for revoking a confirmation and that after the expiration of six months from the entry of the order of confirmation, a party in interest may not even assert fraud as a reason for revoking the confirmation.

The judicial interpretation of the comparable statutes governing confirmation orders that preceded and succeeded section 386 reflect a uniform policy that fraud in the procurement of a Chapter XI plan of arrangement is the only ground for setting aside a confirmation order and that this issue must be raised by a party in interest within six months after the arrangement was confirmed. Montmartco's effort to circumvent this statutory mandate which expressly governs confirmations of Chapter XI plans of arrangement, by attempting to invoke the court's general equity power under F.R.Civ.P. 60(b) to relieve a party from a final judgment or order, is not legally supportable. Notwithstanding the general equitable powers conferred by F.R. Civ.P. 60(b), strict compliance with the exclusive means for obtaining revocation of a confirmed plan of arrangement for fraud, by an objection raised within the six-month limitation period, is a prerequisite to relief.

### Discretionary Equitable Power under Rule 60(b)(4) and (6)

Even if this court were to accept Montmartco's position (which it does not) that § 386 of the former Bankruptcy Act is not the exclusive means for revoking a plan of arrangement and that F.R.Civ.P. 60(b) provides an additional remedy for setting aside a Chapter XI plan of arrangement on grounds other than fraud, Montmartco has failed to establish any persuasive reason why this court should exercise its discretion at this time and vacate the confirmed plan of arrangement.

Initially, it must be observed that under F.R.Civ.P. 60(b)(3), "fraud ... misrepresentation, or other misconduct of an adverse

(1) contain such provisions as are necessary to protect any entity acquiring rights in good faith reliance on the order of confirmation; and

party" is also specified as grounds for relieving a party from a final judgment or order. However, in *In re Newport Harbor Associates,* 589 F.2d 20, 24 (1st Cir.1978) it was held that the provisions of § 386 and Rule 11–41 "are intended to be the exclusive means for obtaining revocation of a confirmed plan of arrangement for fraud...." This concept of exclusiveness negates any suggestion that it was intended that the broader grounds of fraud or misconduct, as stated in F.R.Civ.P. 60(b)(3), should duplicate the relief authorized under § 386 and Rule 11–41. Accordingly, if subsection (3) of F.R.Civ.P. 60(b) has no application to the revocation of a Chapter XI plan of arrangement, it follows that F.R. Civ.P. 60(b) in general should not be regarded as an additional remedy for this purpose.

### F.R.Civ.P. 60(b)(4)

Subsection (4) of F.R.Civ.P. 60(b) permits relief from a final judgment when "the judgment is void." In response to this point, Montmartco alleges that the confirmation order and its consummation are invalid, void, and without legal effect under New York law. As Montmartco argues in its brief:

(1) The confirmation order and its consummation are invalid, void, and without legal effect under New York law, for the following reasons:

(a) EBC's obligation under the confirmation order and the plan to distribute dividends amounting to 5% of its sales to its shareholders, even if it is insolvent or would be insolvent after such distribution, is in direct derogation of New York Business Corporation Law.

(b) EBC is required, under the confirmation order, to pay dividends even if it has no surplus out of which dividends can be distributed. The payment of dividends may therefore result in the unauthorized distribution of the corporation's capital.

(2) revoke the discharge of the debtor."

(c) While New York law expressly prohibits the designation as "common stock" of stock that is entitled to preference in the distribution of dividends, the confirmation order purports to grant preferential dividend rights to the "common stock" to be issued to the creditors.

(d) The confirmation order directs the issuance of stock to secure the debtor's debt to the trustee. Such stock, if issued, would be void for lack of consideration.

(2) The plan, as amended, was never accepted by the creditors. Since the court has not found that the proposed modification did not materially and adversely affect the interests of the creditors, the procedures for acceptance of a modified plan should have been followed.

(3) The plan contains impermissible provisions affecting shareholders.

In ascertaining whether or not a judgment is in fact void within the meaning of F.R.Civ.P. 60(b)(4), it is important to recognize that a judgment is not void simply because it is erroneous, because F.R.Civ.P. 60(b)(4) is not intended as a substitute for appeal. *Margoles v. Johns*, 660 F.2d 291, 295 (7th Cir.1981), *cert. denied* 455 U.S. 909, 102 S.Ct. 1256, 71 L.Ed.2d 447 (1982); *Baumlin & Ernst, Ltd. v. Gemini, Ltd.*, 637 F.2d 238, 242 (4th Cir.1980); *Otte v. Manufacturers Hanover Commercial Corp. (In re Texlon Corp.)*, 596 F.2d 1092, 1099 (2d Cir.1979). The Second Circuit Court of Appeals, in the *Texlon* case, expressed this point as follows:

Even if the order had been contrary to an express provision of the Bankruptcy Act ... the order would not have exceeded the 'jurisdiction' of the court.

596 F.2d at 1099. Similarly stated:

A judgment is not void merely because it is erroneous. It is void only if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law.

11 C. Wright & A. Miller, Federal Practice and Procedure § 2862, at 198–200 (1973) (footnotes omitted).

Even if F.R.Civ.P. 60(b)(4) afforded Montmartco a procedural vehicle for attacking the March 30, 1984 confirmation order, there exists no meritorious basis for invoking the discretionary equity power authorized under F.R.Civ.P. 60(b)(4) in order to set aside the confirmed plan of arrangement, as requested by Montmartco. To the extent that Montmartco suggests that the debtor's issuance of stock allegedly contravenes the New York Business Corporation Law, Montmartco's position is undercut by the fact that it is not a shareholder whose interest might be adversely affected or diluted by the issuance of additional stock; Montmartco is an unsecured general creditor who will benefit by the receipt of such additional stock. Montmartco's contention that the debtor's payment of dividends to its creditors in connection with the proposed new issue of stock would be violative of New York law if EBC were insolvent at the time, or if paid out of capital, is premature because there is no proof that EBC is insolvent or that it will pay such dividends out of capital rather than surplus. Similarly, Montmartco may not assert that the proposed additional stock to be issued by EBC to its creditors will have a dividend preference which is prohibited under New York law for common stock, which must be issued without extraordinary rights and privileges. Whether or not the issuance of such stock will offend the interests of other shareholders is a matter that might have been raised by the other shareholders and not Montmartco, an unsecured general creditor who will be the recipient of such new stock. So too, Montmartco may not now be heard to say that the plan contains an impermissible provision affecting shareholders and that a plan which affects the interests of shareholders cannot be entertained under Chapter XI. Montmartco is not now a shareholder and may not invoke, for its own benefit, the equitable powers under F.R.Civ.P. 60(b)(4) for the purpose of collaterally attacking a confirmed plan of arrangement.

Montmartco also contends that the standard for accepting the modified plan had

not been met. The original plan of arrangement, dated December 1, 1977, was amended in March of 1984. Voting on the original plan occurred in February, 1978, and it was accepted by the requisite majority of creditors in number and amount, as required under § 362(1) of the former Bankruptcy Act and reflected in an order dated February 15, 1978. The original plan provided that the installment payments would commence after the date that the arrangement was accepted. The amended plan provided for installment payments to commence twelve months after the date that the order of confirmation was signed. Montmartco argues that the order confirming the plan of arrangement is void because the amended plan materially and adversely affected the interests of EBC's creditors. However, § 364 of the now repealed Bankruptcy Act and former Rule 11–39 provide that if the court finds that the modification does not materially and adversely affect the interest of any creditor who has not in writing accepted it, the modification is deemed accepted by all who previously accepted the plan. Although no order was entered expressly containing such a finding, it was apparent at the confirmation hearing that the installment payments that were originally proposed to be made after the plan was accepted could not lawfully be made until after the plan of arrangement was confirmed. Manifestly, the modification did not materially and adversely affect the interest of any creditor who had not previously accepted the plan. This point was recognized when the debtor satisfied the prerequisites for confirmation delineated under § 366 of the former Bankruptcy Act, including the findings that "(1) the provisions of this chapter have been complied with" and "(2) it is for the best interests of the creditors and is feasible." Accordingly, Montmartco's characterization of the confirmation order as a void judgment within the meaning of F.R.Civ.P. 60(b)(4) is unpersuasive.

### F.R.Civ.P. 60(b)(6)

■ Subsection (6) of F.R.Civ.P. 60(b), which refers to "any other reason justifying relief from the operation of the judgment" is a "catch all" provision reflecting the traditional equity powers that the court may exercise to relieve a party in interest from the consequences of a final judgment as a result of the operation of inequitable conditions. The motion for this relief must be made "within a reasonable time." Both EBC and Montmartco are familiar with the reach of subsection (6), having previously been instructed in its operation by the Second Circuit Court of Appeals in *In re Emergency Beacon Corp.*, 666 F.2d 754, 758–60 (2d Cir.1981).

It is established, however, that relief under clause (6) is not available unless the asserted grounds for relief are not recognized in clauses (1)–(5). *See United States v. Cirami*, 563 F.2d 26, 32 (2d Cir.1977); 7 Moore's Federal Practice ¶ 60.27[1], at 343–47 (2d ed. 1979].

．　　．　　．　　．　　．

This portion of Rule 60(b) is properly invoked when there are extraordinary circumstances, *Ackermann v. United States*, 340 U.S. 193, 199, 71 S.Ct. 209, 212, 95 L.Ed. 207 (1950); *see United States v. Cirami, supra*, 563 F.2d at 32, or where the judgment may work an extreme and undue hardship, *see United States v. Karahalias*, 205 F.2d 331, 333 (2d Cir.1953).

．　　．　　．　　．　　．

A motion under Rule 60(b) is addressed to the sound discretion of the trial court and this discretion "is especially broad under subdivision (6), because relief under it is to be granted when 'appropriate to accomplish justice.'" *International Controls Corp. v. Vesco*, 556 F.2d 665, 670 (2d Cir.1977) (*quoting Klapprott v. United States*, 335 U.S. 601, 615, 69 S.Ct. 384, 390, 93 L.Ed. 266 (plurality opinion per Black, J.), *modified on other grounds*, 336 U.S. 942, 69 S.Ct. 398, 93 L.Ed. 1099 (1949)). See C. Wright & A. Miller, *Federal Practice and Procedure, supra*, § 2864, at 211–13; 7 Moore's Fed-

eral Practice, *supra,* § 60.27[2], at 352–53.

*Id.* at 758–60.

Montmartco has presented no extraordinary circumstances justifying the revocation of the March 30, 1984 Chapter XI confirmation order. Montmartco and EBC have engaged in continued adversarial disputes from the inception of this case in 1976. Montmartco objected to the debtor's original plan of arrangement, dated December 1, 1977, which, nevertheless, was accepted by the requisite majority of creditors in number and amount as required by § 362(1) of the former Bankruptcy Act. Thereafter, Montmartco appeared in opposition at the hearing on best interests of the creditors and feasibility of the plan of arrangement pursuant to § 366(2) of the Act and opposed the confirmation of the debtor's Chapter XI plan. However, the court found that the debtor's original plan of arrangement satisfied the requirements of § 366(2). Montmartco also received a copy of the March 30, 1984 order of confirmation of the amended plan of arrangement, which was mailed to all creditors on April 12, 1984. Thereafter, EBC entered into agreements with various taxing authorities and has made payments in accordance with those agreements in reliance upon the finality of the March 30, 1984 order of confirmation. In these circumstances, Montmartco may not now be heard to say that its inactivity for one year after the confirmation of the debtor's Chapter XI plan of arrangement is justifiable and that there exist unusual and extraordinary circumstances which should compel the court to exercise the discretionary equity power prescribed in F.R.Civ.P. 60(b)(6). Montmartco's motion palpably violates the mandate in subsection (6) that "[t]he motion shall be made within a reasonable time...."

## CONCLUSIONS OF LAW

1. Section 386 and Rule 11–41 are the exclusive means for obtaining revocation of a confirmed plan of arrangement under Chapter XI of the former Bankruptcy Act of 1898.

2. Fraud in the procurement of a confirmed Chapter XI plan of arrangement is the sole ground for revoking the confirmation order, and this issue must be raised by a party in interest within six months after the arrangement was confirmed.

3. F.R.Civ.P. 60(b)(4) and (6) do not provide additional grounds for revoking a confirmed Chapter XI plan of arrangement and may not be invoked for such purpose.

4. Even if F.R.Civ.P. 60(b)(4) and (6) were available to Montmartco for relief from the consequences of the debtor's confirmed Chapter XI plan of arrangement, Montmartco has failed to establish a meritorious basis for invoking the discretionary equity power authorized under these provisions.

5. Montmartco's motion pursuant to Bankruptcy Rule 924 and F.R.Civ.P. 60(b)(4) and (6) to vacate the court's March 30, 1984 order confirming the debtor's Chapter XI plan of arrangement, is denied.

SETTLE ORDER on notice.