### In re EMERGENCY BEACON CORPORATION, Debtor.

**Bankruptcy Nos. 76 B 356, 77 B 980.**

United States Bankruptcy Court, S.D. New York.

Sept. 10, 1985.

Kronish, Lieb, Shainswit, Weiner & Hellman, New York City, for Montmartco, Inc.; Karen M. Klein, New York City, of counsel.

Barr & Faerber, Spring Valley, N.Y., for Trustee.

Stephen Glotzer, Subordinated Creditor, pro se.

**HOWARD SCHWARTZBERG**, Bankruptcy Judge.

Montmarco, Inc. ("Montmartco"), has moved for an order pursuant to § 377(1) of the Bankruptcy Act of 1898, as amended (former 11 U.S.C. § 777(1) and, former Bankruptcy Rule 11–42(b)(5)(A), dismissing this Chapter XI petition and directing the debtor, Emergency Beacon Corporation, to proceed in bankruptcy pursuant to the liquidation provisions of the former Bankruptcy Act.

Montmartco, the largest unsubordinated general unsecured creditor of the debtor, premises its motion on the assertion that the debtor has failed to perform its obligations to its general unsecured creditors pursuant to its confirmed amended plan of arrangement, which failure it contends is a default in consummating the arrangement.

The debtor's Chapter XI petition was filed with this court on February 18, 1976. An adjudication order was entered on March 11, 1977. After a change in management, the debtor was permitted by this court to reinstate its Chapter XI case on April 29, 1977 under the aegis of the former trustee in bankruptcy who then continued to operate the debtor as the trustee in possession. The new management's

amended plan of arrangement was confirmed pursuant to an order dated March 30, 1984. Throughout the nine and one-half year duration of this Chapter XI case, the debtor and Montmartco, Inc. have engaged in a hostile barrage of litigated matters, including two appeals to the Second Circuit Court of Appeals,[1] (a period approximately equivalent to the length of the Trojan War [2]). Montmartco, Inc. (under its former name of Montco, Inc.) had, prior to the petition, advanced $275,000 to the debtor's former management which was collateralized by certain assets of the debtor, including inventory accounts receivable, fixtures and a $70,000 mortgage on the debtor's business location. Some time after it defaulted, the debtor surrendered the collateral to Montmartco for liquidation, which resulted in a $147,293.33 deficiency to Montmartco.

On March 30, 1984, an order was entered by this court confirming the debtor's Chapter XI plan (the "plan"). The plan proposed to pay unsecured creditors 10.5% of their allowed claims over a seven year period together with shares of stock of the debtor, which would entitle them to receive 5% of the debtor's annual gross income, until a 100% distribution is achieved.

Approximately one year after confirmation, Montmartco moved, pursuant to F.R. Civ.P. 60(b), to vacate and set aside the order confirming the debtor's Chapter XI plan of arrangement. On April 16, 1985, this court denied Montmartco's motion for various reasons, which included the conclusion that § 386 of the former Bankruptcy Act and former Bankruptcy Rule 11–41 specify the exclusive grounds for revoking a confirmed Chapter XI plan of arrangement. *In re Emergency Beacon Corp.*, 48 B.R. 356, 13 B.C.D. 204 (Bkrtcy.S.D.N.Y. 1985). The appeal of this decision is now pending in the District Court.

---

**1.** *In re Emergency Beacon Corp.*, 665 F.2d 36 (2d Cir.1981) and 666 F.2d 754 (2d Cir.1981).

**2.** Homer tells us that the Achaeans lay seige to the walls of Troy for nine years before Odysseus

in the tenth year gained access to the city by reliance on the famous horse. *See* Homer, The Iliad. (S. Butler trans. L. Loomis ed. 1942 at XVII).

After confirmation, the trustee in possession brought on for a hearing his objections to Montmartco's unsecured claim. On April 12, 1985, this court ruled that the trustee in possession had not sustained his burden of proof as to the various objections to Montmartco's claim and ruled that: (1) Montmartco's acceptance of the debtor's accounts receivable was not an implied satisfaction of its claim; (2) Montmartco's collection efforts regarding the accounts receivable were not unreasonable; (3) Montmartco's claim could not be reduced under the collateral source theory by the amount of the settlement proceeds which Montmartco received from the law firm which drafted an imperfect security agreement for Montmartco; (4) the shares of the debtor's stock pledged with Montmartco by the debtor's former president did not reduce the debtor's obligation to Montmartco because they collateralized the former president's liability to Montmartco under his personal guaranty of payment; (5) Montmartco was not responsible for the disappearance of certain collateral from the public auction sale; and (6) there was no evidence that the $80,000, which formed part of Montmartco's claim, was returned to Montmartco because the proof established that the $80,000 in question was used to satisfy the debtor's antecedent obligation to a secured bank. *See In re Emergency Beacon Corp.*, 48 B.R. 341 (Bkrtcy.S.D.N.Y.1985). Accordingly, on May 14, 1985, this court entered an order allowing the claim of Montmartco in the net amount of $147,239.33. This order is also on appeal to the District Court.

The May 14, 1985 order allowing Montmartco's claim also provided that to the extent E.B.C. had already made distribution to its other general unsecured creditors in accordance with the plan, the debtor should also make distribution to Montmartco within 10 days of the entry of the order. The debtor did not make any distribution to Montmartco because the debtor objected to Montmartco's claim. The May 14, 1985 order resolved this dispute in Montmartco's favor.

By Notice of Motion dated June 21, 1985, the debtor's president (who is also a subordinated creditor), applied for an order tolling the disbursement of funds and stock certificates, pending a determination of the appeal of the May 14, 1985 order allowing Montmartco's claim. At the hearing of the motion on July 3, 1985, the court denied the motion to delay the debtor's distribution obligation, and ruled that if the debtor's amended plan of reorganization were not consummated the debtor would be adjudicated. (No order has yet been submitted with regard to this motion).

Pursuant to the plan, in addition to the sum of 10.5 cents on each dollar of unsecured debt payable in seven equal annual installments of 1.5 cents on each dollar, the unsecured creditors are also entitled to receive non-interest bearing, non-negotiable certificates of indebtedness executed by the debtor to evidence the installment payments due.

At the hearing on this motion the debtor's president advised that in light of this court's July 3, 1985 denial of the debtor's application to toll or suspend any distributions to Montmartco pending its appeal, the debtor had mailed a check to Montmartco for the first cash installment, together with interest to cover the delayed payment. However, the debtor has not yet distributed to Montmartco the certificate of indebtedness and the common stock which Montmartco is entitled to receive under the plan. The debtor and the trustee in possession gave as an excuse for this failure the fact that Montmartco had not executed and returned the I.R.S. Form W-9 which the debtor had mailed to Montmartco. The I.R.S. Form W-9 refers to backup withholding on dividends and does not suspend the debtor's obligation to issue common stock to unsecured creditors pursuant to its confirmed plan of reorganization.[3]

---

**3.** Corporations which pay dividends over $10.00 per calendar year to any payee are required to file a tax return which sets forth the amount paid along with the name and address of the payee. 26 U.S.C. § 6042(a). A dividend (defined by reference to 26 U.S.C. § 316) is any

The trustee in possession asserts that the certificate of indebtedness and the issuance of common stock in accordance with the debtor's plan will be accomplished in the next several weeks and that Montmartco's motion for an adjudication constitutes unnecessary additional litigation for which costs and attorneys' fees are requested.

Pursuant to § 368 of the Former Bankruptcy Act (former 11 U.S.C. § 768) this court has jurisdiction with respect to this dispute because the debtor's plan provides that the court shall retain jurisdiction after confirmation until the provisions of the arrangement have been performed. *See* 9 Collier on Bankruptcy ¶ 9.29[1] (14th Ed. 1978).

■ Section 377 of the former Bankruptcy Act of 1898, as amended, directs the court to grant relief if "the debtor defaults in any of the terms" of the arrangement. Former Bankruptcy Rule 11–42(b)(5) implements § 377 and provides that where the court has retained jurisdiction after confirmation of a plan the court shall dismiss or adjudicate a case "if the debtor defaults in any of the terms of the plan. . . ." Former Bankruptcy Rule 11–42(b)(5)(A). The key word is "defaults". The debtor reasons that no default occurred because the delay in distribution to Montmartco was caused by a pending appeal with respect to the debtor's objection to Montmartco's claim and the ability of the debtor to recoup any such distribution from Montmartco if the debtor should prevail on appeal. However, the debtor has not obtained any stay pending appeal. Thus, the debtor may not unilaterally decide to withhold distribution to Montmartco pending a determination of its appeal. The consummation of the debtor's confirmed plan of reorganization should not be predicated upon, nor delayed by, the debtor's dispute with a major unsecured creditor.

■ In light of the fact that the debtor has now issued its check to Montmartco in payment of the first installment due under the confirmed plan and had previously made the first installment payment to all other unsecured creditors, it would be inappropriate to view the delay in payment as a default in the context of the debtor's reservations, however insubstantial they might be. Having finally confirmed a plan of reorganization in 1984 with respect to a much litigated case commenced in 1976 by a debtor who is now operating profitably, this court will not now direct that the debtor proceed in bankruptcy liquidation because this drastic relief would not serve the best interests of the unsecured creditors nor would it further the concept that reorganization is to be encouraged.

In the event that the debtor does not file proof with this court that it has made all of the distributions called for under its confirmed plan of arrangement and has issued all of the certificates of indebtedness and common stock required under such plan within ten days' from the date of the order to be entered with respect to Montmartco's motion, the court will regard such failure as a default within the meaning of § 377 of the former Bankruptcy Act and former Bankruptcy Rule 11–42(b)(5)(A) and shall dismiss the Chapter XI petition and direct the debtor to proceed in bankruptcy. If proof of compliance is filed by the debtor within ten days of the order to be entered the court shall not find that the delay in consummation of the plan is a default and will permit the debtor to continue in accordance with the confirmed plan of arrangement.

The application by the trustee in possession for attorneys' fees is denied.

distribution of property by a corporation out of earnings. 26 U.S.C. § 6042(b). A corporation paying dividends must deduct and withhold tax on dividends if the payee fails to furnish its name, address and taxpayer identification number. 26 U.S.C. § 3406(a)(1)(A) ("Backup Withholding"). This information is that requested in an I.R.S. form W–9. Failure of the corporation to file the information requested in the W–9 with the I.R.S. will result in a self-imposed fine on the corporation of $50.00 per occurrence. 26 U.S.C. § 6652(a)(2)(A)(i). The $50.00 fine can be avoided by the corporation's showing of due diligence in attempting to satisfy the reporting requirements of 26 U.S.C. § 6042(a).

SETTLE ORDER in accordance with the foregoing.