**In re Tinga Khendeka SEISAY, Gunilla Elizabeth Seisay, Debtors.**

**Bankruptcy No. 84 B 20252.**

United States Bankruptcy Court, S.D. New York.

June 17, 1986.

Miller & Arnow, Levittown, N.Y., for Gary Bernard, Inc.

Thomas J. Romans, P.C., Hackensack, N.J., for debtors.

## DECISION ON MOTION SEEKING AN ORDER FOR A NEW TRIAL PURSUANT TO FED.R.CIV.P. 60(b)

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The plaintiff, Gary Bernard, Inc., a corporate money lender, brings this motion for a new trial in accordance with Fed.R.Civ.P. 60(b) on grounds of newly discovered evidence and fraud. The plaintiff claims that the debtor, Tinga K. Seisay, asserted at the trial of this case that he was the victim of a usurious loan, whereas in reality, he had allegedly enticed the plaintiff into a "sting" maneuver which caused the plaintiff to believe that the debtor was more gullible than he was. The debtor's defense of usury was sustained and the plaintiff's claim was expunged.

### BACKGROUND

This court previously held that under New York law, a debtor's usury defense, which normally is unavailable to corporate borrowers and guarantors, could be asserted by these individual debtors to defeat the claim of the plaintiff for a loan made to the debtor's shell corporation, Tagin Consultants, Inc., which was secured by a mortgage against their home. This ruling was based on the fact that the plaintiff and the debtor understood that the proceeds from the loan were to be used for the personal needs of the debtor and not to further any corporate business. *In re Seisay,* 49 B.R. 354 (Bankr.S.D.N.Y.1985), *aff'd* No. 85 Civ. 4582 (S.D.N.Y. Feb. 28, 1986), (Lowe, D.J.) [Available on WESTLAW, DCTU database]. It was found that the debtor's "dummy cor-

poration", called Tagin Consultants, Inc., had no assets, paid no franchise taxes, issued no stock and did no business. If the loan were to have been made directly to the debtor, it would have been usurious under applicable New York law. N.Y.G.O.L. § 5–501. However, the prohibition on usury did not apply to corporations. N.Y.G.O.L. § 5–521. It was found that the plaintiff and the debtor knew that the loan was for personal debt reasons and that the loan was not in furtherance of any profit-oriented enterprise of Tagin Consultants, Inc., citing *Schneider v. Phelps*, 41 N.Y.2d 238, 391 N.Y.S.2d 568, 359 N.E.2d 1361 (1977).

## THE MARK

The plaintiff, Gary Bernard, Inc., is in the business of making loans and collateralized advances. The debtor, Tinga K. Seisay, who was heavily in debt answered a mortgage broker's advertisement in a newspaper and was introduced to the principals of the plaintiff, who visited the debtor at his home. Tinga K. Seisay informed the plaintiff that he would like to obtain a $40,000 mortgage secured by his home in order to satisfy some pressing claims. After viewing the debtor's house, the principals of the plaintiff determined that the debtor had a substantial equity in his home, and that the plaintiff was willing to advance $120,000 as a mortgage loan.

## THE SET UP

The principals of the plaintiff informed Mr. Seisay that they were willing to advance the mortgage loan at an interest rate of 24 percent per annum, but that the loan would have to be made to a corporation and not directly to the individual debtor. Mr. Seisay testified that he told the principals of the plaintiff that he owned a shell corporation which did not conduct any business, which was called Helsingborg Construction Company ("Helsingborg"). He further testified that he informed the plaintiff's principals that the corporation was formed with the hopes that perhaps he could get a minority job in this country. He also testified

that Helsingborg had never issued any stock.

## THE SCAM

In its motion for a new trial, the plaintiff asserts that it recently learned by accident during the course of another matter with a Mr. Robert Essex that Mr. Essex had previously been involved in a similar loan transaction with the debtor in 1978. In that transaction Mr. Seisay also claimed that the lender would only make a loan to a corporation, and not to Mr. Seisay, because the interest rate was also 24 percent per annum. When Mr. Essex sued to recover on the loan, Mr. Seisay's verified answer alleged that he formed Helsingborg Construction Company solely for the purpose of permitting the corporation to borrow the money at 24 percent interest, which debt was then guaranteed by Mr. Seisay. Mr. Seisay also stated in his verified answer in the Essex case that Helsingborg did no business. The plaintiff asserts that Mr. Seisay was then familar with the rule against using sham corporate borrowers for personal needs, because he cited *Schneider v. Phelps*, 41 N.Y.2d 238 (1977) in his defense in the Essex suit. Moreover, the plaintiff contends that Mr. Seisay committed perjury in the instant case because he testified that Helsingborg had issued no stock certificates, whereas Helsingborg had issued five shares of its stock to the debtor, Tinga K. Seisay. It is also argued that Mr. Seisay's testimony in this case was false when he said that Helsingborg was formed with the hopes of his getting a minority job, whereas from the facts in the Essex case it appears that Helsingborg was formed solely for the purpose of obtaining the loan from Mr. Essex.

## THE SWITCH

When the principals of the plaintiff visited the debtor's home in order to finalize the arrangements for the loan, Mr. Seisay requested that the corporate borrower's name specified in the borrowing forms should be changed from Helsingborg to Tagin Consultants, Inc. ("Tagin"). There

was some question as to whether Helsingborg continued to exist as a valid corporation because it had not paid corporate franchise taxes. The plaintiff's principals agreed to this switch and inserted the name of Tagin Consultants, Inc. instead of Helsingborg. At the trial, the court found that Tagin had no assets, paid no franchise taxes, issued no stock and did no business. Thus, so far as the parties were concerned, it did not matter which "dummy" corporation was used, because all of the parties understood that the proceeds of the loan were to be used by the debtors for their personal needs and were not applied in furtherance of any business or corporate purpose.

## THE STING

On June 12, 1984, the debtors filed with this court their petition for an adjustment of debts pursuant to Chapter 13 of the Bankruptcy Code. They thereafter objected to the claim filed by the plaintiff in the sum of $147,785. On May 8, 1985, this court ruled that the debtors' objections to the claim filed by the plaintiff in the amount of $147,785 was sustained and directed that this claim should be expunged because the loan was usurious and void under Section 5-501 of the New York General Obligations Law.

## THE AFTERMATH

The plaintiff now seeks a new trial because it has recently discovered that the debtor, Tinga K. Seisay, was not as innocent as they believed when they suggested the need for a corporate borrower as a prerequisite to a loan repayable with interest at the rate of 24 percent per annum. The plaintiffs did not know that Mr. Seisay had previously used Helsingborg as a "dummy" corporation for the purpose of a similar loan from a Mr. Robert Essex, another money lender, and had also asserted the defense of usury to repayment of the loan from Mr. Essex. That there was a discrepancy in Mr. Seisay's testimony as to the fact that Helsingborg had issued five shares of stock to Mr. Seisay and that the

corporation had been formed for the sole purpose of obtaining the previous loan, and not with the hopes of getting minority jobs, is not determinative. The plaintiff had no intention of making a loan to Helsingborg for business purposes. Indeed, the plaintiff had no intention of making a loan to Tagin Consultants, Inc. for its business purposes. The plaintiff was willing to use either Helsingborg or Tagin as the corporate "dummy" through which the intended loan could be funneled to the debtors for their personal needs. Therefore, the switch from Helsingborg to Tagin was of no moment to the plaintiff since what was actually intended was a subterfuge to avoid the usury laws. That Mr. Seisay was just as familiar with this scheme as the plaintiff and was not only willing to play along, but thereafter turned the tables on the plaintiff and pleaded usury as a defense, does not make the loan any less usurious. Mr. Seisay did not volunteer to pay interest at the rate of 24 percent per annum nor did he suggest that a corporate "dummy" be used as a condition for obtaining the loan. Those were terms quoted to him by the plaintiff. Mr. Seisay was evidently quite willing to accept these terms. On the basis of those facts there is no basis for allegations that he entrapped the plaintiff's principals or that he was willing to accept a loan only on usurious terms with the intention of thereafter voiding the transaction. Moreover, there was no allegation that Mr. Seisay would have rejected a loan that was repayable at a legal rate of interest.

## THE DECISION

The plaintiff urges that the newly discovered evidence probably would change the outcome of this case. This argument is premised on the assertion that the debtor, Tinga K. Seisay, lied when he testified that his "dummy" corporation Helsingborg did no business and issued no stock certificates, whereas the truth is that Helsingborg issued five shares of stock to Mr. Seisay and was organized to obtain a previously similar usurious loan from a Mr. Rob-

ert Essex. Thus, the plaintiff contends that Mr. Seisay gave false testimony to create the impression he was an innocent borrower and that the plaintiff's principals knew that the loan which they advanced to another "dummy" corporation known as Tagin Consultants, Inc., was not a corporate loan but a personal loan disguised as a corporate loan to avoid the usury laws. The affidavit of the plaintiff's principal, Bernard Wesson, submitted in support of the plaintiff's motion under Fed.R.Civ.P. 60(b), states:

It therefore would appear to your deponent that not only did Mr. Seisay commit perjury and not only was the Court mislead [sic] by adopting findings based upon false testimony, but that perhaps GARY BERNARD INC. is the victim of a calculated scheme to take a corporate loan, precipitate a default, and raise the question of usury under the Schneider Case. Manifestly having gone through the Essex litigation, Mr. Seisay now does not appear as an innocent borrower. He now appears as a seasoned, calculating individual, *setting a trap for an unwary lender.* In both the ESSEX CASE and the GARY BERNARD CASE, Mr. Seisay did not hesitate to sign affidavits swearing that the purpose of the loan was for the use of the corporation solely.

(emphasis added).

The plaintiff assumes that a "seasoned, calculating individual" who is willing to go along with a lender's condition that a "dummy" corporation be used as a subterfuge in order to allow the lender to collect a usurious interest is precluded from asserting usury as a defense. In other words, the plaintiff believes that the usury laws were intended to protect only innocent, unsophisticated individuals. This position is not supportable. The debtor did not impose the conditions of the loan. He did not offer to use a "dummy" corporation as the basis for the loan, nor did he insist on paying a usurious rate of interest. The fact that the Mr. Seisay may not have been as innocent as the "unwary lender" believed, does not mean that Mr. Seisay

would have been estopped from using the defense of usury.

[I]t is only when a borrower *fraudulently* inserts a usurious interest rate in order to later defeat recovery against him, that he may be estopped from using the defense of usury.

*Jue v. Bass,* 299 F.2d 374, 378 (9th Cir. 1962); *In re Dane,* 55 A.D.2d 224, 390 N.Y.S.2d 249 (3d Dep't 1976); *Oxhandler Structural Enterprises, Inc. v. Billard,* 104 Misc.2d 38, 427 N.Y.S.2d 569 (Sup.Ct. N.Y.Co.1980).

The usury statutes are for the protection of the borrower and the purpose of section 5–511 of the General Obligations Law would be thwarted if the lender could avoid its consequences by asking the borrower to set the rate. Since the [obligee] herein asserted the defense of usury it cannot be said that the [obligee] waived the defense by setting or agreeing to the [usurious] rate of interest.

*In re Dane,* 390 N.Y.S.2d at 250.

█ This situation is not unlike that in *Kredietbank N.V. v. ESIC Capital Corp.* (*In re Rosner*), 48 B.R. 538 (Bankr.E.D.N.Y.1985) where the lender urged that the debtor was estopped from pleading usury because at the time the transaction was entered into the lender received a letter from the debtor's attorney stating that the collateral contract giving rise to the usury was legal. Judge Goetz said of this assertion:

The claim that ESIC, which entered into at least thirty similar transactions with other concerns prior to that with [the debtor], was misled by or relied upon [debtor's] attorney . . . is not believable. Even more to the point, however, the prohibitions against usury are not so easily evaded. Otherwise, every lender would simply have to demand from a borrower already desperate enough to pay interest in the loan-shark range, a letter declaring the transaction legal.

48 B.R. at 549–550. Here, where the claim is not that the lender did not know that the transaction was usurious but that the debt-

or also knew, there can be no estoppel to plead usury.

 Even if the plaintiff had established that Mr. Seisay was not as innocent as his testimony would indicate, this point would not have sustained the usurious illegal loan. The so-called newly discovered evidence as to Mr. Seisay's previous loan from Robert Essex through the use of another "dummy" corporation would not have produced a different result. Newly discovered evidence as contemplated by Fed.R.Civ.P. 60(b)(2) is evidence which was in existence at the time of the trial of which the moving party was excusably ignorant and which would likely produce a different result. *Bradley Bank v. Hartford Accident and Indemnity Company,* 737 F.2d 657, 662 (7th Cir.1984); *Philip v. Mayer Rothkopf Industries Inc.,* 635 F.2d 1056, 1063 (2d Cir.1980); *Washington Mobilization Committee v. Jefferson,* 617 F.2d 848, 850 (D.C. Cir.1980); *Knight v. Hersh,* 313 F.2d 879, 880 (D.C.Cir.1963); 11 C. Wright & A. Miller Federal Practice and Procedure § 2808 (1985 ed.). Therefore, the plaintiff's newly discovered evidence contention is not persuasive because it would not produce a different result.

■ The plaintiff also maintains that Mr. Seisay lied when he testified that Helsingborg Construction Co., Inc. was formed by him to obtain minority jobs and that no shares of stock had been issued by Helsingborg. The status of Helsingborg's corporate purpose and existence was not material to this case because the plaintiff's loan was made to Tagin Consultants, Inc., the other "dummy" corporation owned by the debtors which was used by the plaintiff as a subterfuge for the usurious loan. Nonetheless, Mr. Seisay's testimony as to the activities of Helsingborg and the number of its outstanding shares, had no bearing on whether or not the plaintiff's loan to Tagin Consultants, Inc. was usurious.

## THE CONCLUSION

The plaintiff's motion for a new trial pursuant to Fed.R.Civ.P. Rule 60(b) is denied.

IT IS SO ORDERED.