**In re CHIPWICH, INC., Debtor.**

**Bankruptcy No. 84 B 20346.**

United States Bankruptcy Court, S.D. New York.

Aug. 21, 1986.

See also, Bkrtcy., 54 B.R. 427.

Schwartz & Schlachter, New York City, for Aloha Chipwich, Inc.; Seymour J. Silverberg, of counsel.

Angel & Frankel, P.C., New York City, for Chipwich, Inc.; Joshua J. Angel, and Rhoda J. Firestone, of counsel.

## DECISION ON MOTION SEEKING MODIFICATION OF STAY CONTAINED IN ORDER OF CONFIRMATION

HOWARD SCHWARTZBERG, Bankruptcy Judge.

Aloha Chipwich, Inc. ("Aloha"), a party to a rejected contract with the confirmed Chapter 11 debtor, has moved pursuant to Fed.R.Civ.P. 60(b) to vacate a "so ordered" stipulation between it and the debtor which settled an adversary action brought by the debtor against Aloha. Aloha also seeks a modification of the stay contained in the confirmation order so as to be allowed to bring a plenary action against the debtor and others. Aloha's proposed cause of action arises out of alleged prepetition and postpetition claims against the debtor. Aloha asserts the existence of a conspiracy between the debtor and third parties which was allegedly abetted and concealed by the debtor up to and including the negotiations which resulted in the stipulation of dismissal. Aloha argues that had it known of the conspiracy it would never have entered into the compromise and would have asserted a counterclaim in the adversary action. Aloha alleges that it should be relieved of the order on the basis of (1) mistake (2) newly discovered evidence and (3) fraud in the inducement.

There was no evidentiary hearing because Aloha requested that it be allowed to submit its motion.

## FACTS

1. An involuntary petition for relief under Chapter 7 of the Bankruptcy Code was filed with this court against the debtor, Chipwich, Inc., on August 10, 1984.

2. The debtor filed a response to the involuntary petition and, pursuant to 11 U.S.C. § 706(a), elected to convert the case commenced under Chapter 7 of the Bankruptcy Code to a reorganization under Chapter 11 of the Code. An order for relief under Chapter 11 was entered by this court on August 22, 1984. As a result of the order for relief, the debtor was put back into possession of its property and the operation and management of its business as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

3. Prior to the institution of the involuntary petition the debtor manufactured various frozen confections and licensed its name and mark to a variety of entities.

4. On February 25, 1982 the debtor entered into a distribution agreement with P.L.M. International Projects, Ltd. ("P.L.M.") covering the State of Hawaii and Territory of Guam (the "Aloha Hawaii agreement"). On February 24, 1983 P.L.M. assigned its interest to Aloha.

5. Aloha was not listed as a creditor on the debtor's schedules filed with this court (Aloha was listed by the debtor in its schedule of executory contracts). Aloha has not filed a proof of claim or notice of appearance with this court nor has it sought leave to do so to date.

6. On November 1, 1984 an order was entered in this case barring all prepetition claims filed after February 1, 1985 (the "Bar Order").

7. On January 16, 1985 an adversary complaint was served on Aloha by the debtor seeking money damages for Aloha's alleged failure to pay for goods sold to it by the debtor. Aloha never filed an answer in that action nor has it ever applied to this court for an extension of time to answer pursuant to Bankruptcy Rule 9006(b).

8. On July 17, 1985 Aloha and the debtor executed a stipulation of settlement of

674

the adversary action which *inter alia* provided that:

(a) Aloha consented to the entry of an order rejecting the Aloha Hawaii agreement and Aloha agreed not to file a claim for its rejection pursuant to 11 U.S.C. § 365.

(b) The debtor and Aloha's designee, American Pacific Distributors ("A.P.D."), were to execute a lease-purchase agreement and licensing arrangement whereby the debtor leased 30 ice cream carts and licensed its mark to A.P.D. in connection with A.P.D's sale of Chipwich products from the carts (the "ice cream cart lease"). The ice cream cart lease contained a rider whereby A.P.D. acknowledged that it owed the debtor $13,000 to be paid $1000 upon execution, $1000 by August 31, 1985, with the balance in $1000 increments at the end of every month (the language tracks that of the stipulation of dismissal executed by Aloha).

(c) The ice cream cart lease rider also provided that A.P.D. could assign its rights under the agreement subject to the debtor's consent. The ice cream cart lease contains an integration clause which states that no representations were made to A.P.D. other than those incorporated into the agreement. It also contained a clause stating that A.P.D. read the agreement carefully and received advice of counsel. It was executed by Philippe Marnier for A.P.D. and by Aloha's present counsel (Mr. Marnier is also the president of Aloha).

9. The stipulation was "so ordered" on September 6, 1985.

10. On September 6, 1985, this court also signed an order permitting the rejection of the Aloha Hawaii agreement and barring Aloha from filing a claim arising out of the rejection (the "rejection order"). Entry of the order was consented to by the creditors' committee and counsel for A.P.D. "f/k/a Aloha Chipwich, Inc.".

11. On December 20, 1985, an order of confirmation of the debtor's plan of reorganization was entered. The debtor has been operating pursuant to the plan's terms as of that date including distribution to creditors.

12. On June 30, 1986, the present motion was filed pursuant to Fed.R.Civ.P. 60(b)(1–3) made applicable through Bankruptcy Rule 9024. It seeks to vacate the stipulation of dismissal, dated September 6, 1985, on the grounds of newly discovered evidence of fraud and for mistake. The motion was made more than nine months after the stipulation was signed, and more than six months after the entry of the order confirming the debtor's Chapter 11 plan of reorganization.

13. Aloha alleges that some time in 1984 it sublicensed Pint Size Corporation ("Pint Size") to distribute the debtor's products in accordance with the Aloha Hawaii agreement. Aloha states that it terminated the sublicense in 1984 and, that despite its repeated requests that Pint Size cease and desist, Pint Size continued to distribute the products. Aloha further alleges that it repeatedly requested the debtor to order its manufacturing licensee Knudsen corporation ("Knudsen") to cease supplying Pint Size in accordance with the debtor's obligations under the Aloha Hawaii agreement and that the debtor refused to comply with Aloha's request.

14. Aloha also alleges that throughout the negotiations of the stipulation of settlement the debtor fraudulently advised it that the Aloha Hawaii agreement could be assigned and that the debtor offered Aloha its assistance in so doing. Aloha contends that as late as July 10, 1985 (the date of a letter purportedly from Pint Size to Aloha) it was negotiating an assignment of the Aloha Hawaii agreement to Pint Size.

15. Aloha further alleges that starting some time in September 1985, from sources the specifics of which Aloha has not set forth and continuing "[d]uring the last six months, while the entire situation has come unravelled ..." it learned of a "three year continuous pattern of sabotage, failure to cooperate, undermining of commitments under the [Aloha Hawaii agreement] by the debtor in concert with the conduct of Knudsen corporation and 'The Pint Size Corpora-

tion'." Affidavit of Philippe Marnier in support of motion sworn to May 21, 1986. p. 7.

The documents submitted merely reflect the following facts: (a) prior to the execution of the stipulation of dismissal on July 17, 1985 Aloha was negotiating with a third party with regard to the assignment of its Aloha Hawaii agreement. (b) Aloha knew prior to that date that Pint Size was distributing the products which Aloha contends Pint Size had no right to distribute. (c) Aloha stipulated with the debtor to dismiss the adversary action on specific terms already enumerated, including its consent to the rejection of the agreement it was attempting to assign. (d) A.P.D., not Aloha, had an agreement regarding the sale of ice cream from 30 carts.

## DISCUSSION

■ Relief from a judgment pursuant to Fed.R.Civ.P. 60(b) is a remedy of equitable origin which gives a court the discretion to rescind or amend the final judgment. 11 C. Wright and A. Miller Federal Practice and Procedure (1986 ed.) §§ 2851 and 2857. Rule 60(b) is the only vehicle, other than an appeal, that will disturb the *res judicata* effect of a judgment. Therefore, this remedy is only invoked upon a showing of exceptional circumstances in cases other than default. *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir.1986); *House v. Secretary of Health and Human Services*, 688 F.2d 7, 9 (2d Cir.1982).

## FED.R.CIV.P. 60(b)(1

■ One of the grounds under which Aloha moves is that of mistake under Fed. R.Civ.P. 60(b)(1). The basis for the alleged mistake is not enunciated. Apparently Aloha has reference to some mistake by its counsel in settling the adversary dispute and consenting to the rejection of the Aloha Hawaii agreement which Aloha intended to assign.

[A]n attorney's failure to evaluate carefully the legal consequences of a chosen course of action provides no basis for relief from a judgment.

*Nemaizer v. Baker*, 793 F.2d at 62.

In the instant case, Aloha, with the advice of its counsel, agreed to consent to the rejection of the Aloha Hawaii agreement in the stipulation of dismissal. Aloha's counsel also consented to the entry of the separate order which actually rejected the agreement. The fact that neither Aloha nor its counsel anticipated the consequences of an order of rejection under 11 U.S.C. § 365 is not a ground under Fed.R. Civ.P. 60(b)(1) for relief from the order. *Nemaizer v. Baker*, 793 F.2d at 63. This is especially the case where the orders in question were entered on stipulation or by consent. As stated by the Second Circuit Court of Appeals in the *Nemaizer* case:

When the parties submit to an agreed upon disposition instead of seeking a resolution on the merits, however, the burden to obtain Rule 60(b) relief is heavier than if one party proceeded to trial, lost and failed to appeal. [7 J. Moore & J. Lucas, Federal Practice, ¶ 60.19 at 156 (2d ed. 1983)]; *see also Hoffman v. Celebrezze*, 405 F.2d [833] at 836.

*Id.* Aloha has not met its burden of establishing a mistake that would justify relief under Fed.R.Civ.P. 60(b)(1).

## FED.R.CIV.P. 60(b)(2)

## NEWLY DISCOVERED EVIDENCE

■ Newly discovered evidence under Fed.R.Civ.P. 60(b)(2) is evidence which was in existence at the time of trial of which the moving party was excusably ignorant and which would likely produce a different result. *Equal Employment Opportunity Commission v. The Rath Packing Company*, 787 F.2d 318, 331 (8th Cir.1986); *Bradley Bank v. Hartford Accident and Indemnity Company*, 737 F.2d 657, 662 (7th Cir.1984); *Philip v. Mayer Rothkopf Industries, Inc.*, 635 F.2d 1056, 1063 (2d Cir. 1980); *Washington Mobilization Committee v. Jefferson*, 617 F.2d 848, 850 (D.C.Cir. 1980); *Knight v. Hersh*, 313 F.2d 879, 880 (D.C.Cir.1963); *In re Seisay*, 61 B.R. 940, 14 B.C.D. 648, 651 (Bankr.S.D.N.Y.1986);

*In re Crozier Brothers, Inc.*, 60 B.R. 683, 688 (Bankr.S.D.N.Y.1986); 11 C. Wright & A. Miller Federal Practice and Procedure § 2808 (1986 ed.).

■ The movant has the burden of pleading and proving that the evidence is newly discovered and that it had not been discovered despite the movants's diligent efforts to ferret it out prior to the trial. *U.S. v. Potamkin Cadillac Corporation*, 697 F.2d 491, (2d Cir.1983), *cert. denied*, 462 U.S. 1144, 103 S.Ct. 3128, 77 L.Ed.2d 1379 (1983); *Music Research, Inc. v. Vanguard Recording Society, Inc.*, 547 F.2d 192, 196 (2d Cir.1976); *In re Crozier Brothers, Inc.*, 60 B.R. at 688.

■ The debtor's alleged failure to police violations of Aloha's agreement by Pint Size and Knudsen should have put Aloha on notice that all was not well prior to the stipulation of dismissal. *See* Philippe Marnier's affidavit sworn to May 21, 1986 at p.p. 3–4. However, some documentation proffered by Aloha points to a condonation of whatever was going on. A letter dated July 10, 1985 from A.P.D. to Pint Size annexed as an exhibit to an affidavit by Philippe Marnier in response to the debtor's reply papers, sworn to August 6, 1986, states "I am pleased to see your interest in purchasing the 'Chipwich' franchise and sincerely believe that it can only benefit your company. *The fact that you already distribute the retail* and your knowledge of the product makes it a natural for you." (emphasis added). Aloha having been in a position to take discovery in regard to these facts was not being very diligent "while the entire situation has come unravelled."

Aloha has not carried its burden of showing newly discovered evidence of fraud. As to the letter from Pint Size dated July 10, 1985, as of that date, Aloha had a valid contract to assign, which Pint Size might legitimately wish to purchase. Aloha's claim that the debtor was acting in concert with Pint Size or Knudsen is nothing more than a conclusory allegation.

■ The post-rejection actions of the debtor and Pint Size are not within the scope of newly discovered evidence since this "evidence" has its genesis in post-compromise events. *Equal Employment Opportunity Commission v. Rath Packing Company*, 787 F.2d at 331. In any event it is more consonant with post-order events than as an indication of prejudgment fraud since by that time the Aloha Hawaii agreement had already been rejected and could not then be the subject of tortious interference.

## FRAUD UNDER FED.R.CIV.P. 60(b)(3)

■ A motion to vacate an order for fraud in its procurement pursuant to Fed. R.Civ.P. 60(b)(3) must be proved by clear and convincing evidence. *Ginther v. O'Connell, (In re Ginther)*, 791 F.2d 1151, 1153 (5th Cir.1986); *E.F. Hutton & Co., Inc. v. Berns*, 757 F.2d 215, 217 (8th Cir. 1985); *Simon v. Gorsuch* 715 F.2d 1248, 1253 (7th Cir.1983); *Rozier v. Ford Motor Company*, 573 F.2d 1332, 1339 (5th Cir. 1978) (*en banc*); *Di Vito v. Fidelity and Deposit Company of Maryland*, 361 F.2d 936, 939 (7th Cir.1966); C. Wright and A. Miller Federal Practice and Procedure § 2860 (1986 ed.), 7 J. Moore and J. Lucas, Moore's Federal Practice ¶ 60.24[5] (2d ed. 1985). This burden cannot be met by mere conclusory allegations of fraud without specifics as to time, dates, place and persons. *Jennings v. Hicklin*, 587 F.2d 946, 948 (8th Cir.1978) (*per curiam*); *Di Vito v. Fidelity and Company of Maryland*, 361 F.2d at 939.

> The burden of making such showing was upon the defendant, and conclusory averments of the existence of fraud made on information and belief and unaccompanied by a statement of clear and convincing probative facts which support such belief do not serve to raise the issue of the existence of fraud, much less to carry the burden of resolving that issue.

*Di Vito v. Fidelity and Deposit Company of Maryland*, 361 F.2d at 939. *See also Parker v. Checker Taxi Company*, 238 F.2d 241, 244 (7th Cir.1956) (bare petition

filed by movant's attorneys in a motion for new trial on basis of fraud will not meet burden of proof and Fed.R.Civ.P. 60(b)).

Nothing appears in the petition except the conclusions of the affiant that warranted a finding by the court that Field was prejudiced in the trial.... The conclusions of affiants were no evidence. *Id.*

Indeed, the documents annexed to the moving papers are more susceptable of other interpretations than they are susceptable of a showing of fraud. *Fernhoff v. Taho Regional Planning Agency*, 622 F.Supp. 121, 124 (D.Nev.1985).

■ Aloha also had the burden of showing that the fraud was material to the outcome. *Bandai America Incorporated v. Bally Midway Mfg. Co.*, 775 F.2d 70, 73 (3d Cir.1985) *cert. denied* —— U.S. ——, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986); *E.F. Hutton & Company v. Berns*, 757 F.2d at 217; *Harre v. A.H. Robins Company*, 750 F.2d 1501, 1503 (11th Cir.1985); *Stridiron v. Stridiron*, 698 F.2d 204, 207 (3d Cir. 1983); *Rozier v. Ford Motor Company*, 573 F.2d at 1339.

■ However, even if the alleged fraud had occurred, Aloha chose (apparently with notice of operative facts indicating possible fraud such as the alleged failure of the debtor to police Pint Size's infringements) to give up its opportunity to discover further facts when it stipulated to the dismissal. *See e.g. Bandai America, Inc. v. Bally Midway Mfg. Co.*, 775 F.2d at 73–74 (where the settlement agreement specifically acknowledged that further and possibly different facts might be discovered in the future but stated that the parties preferred to settle their differences). Aloha with knowledge of facts warranting a further investigation failed to answer the adversary complaint and take discovery in these matters.

## FATAL FLAW FORECLOSES ALOHA

■ Aloha contends that but for the debtor's fraudulent conduct and misrepresentation Aloha would not have entered

into the July 17, 1985 stipulation with the debtor, which was "so ordered" by the court on September 6, 1985. The stipulation had the effect of discontinuing the debtor's adversary proceeding against Aloha to recover $29,794.92 as the balance allegedly owed by Aloha for ice cream products sold to Aloha by the debtor. The stipulation also authorized the debtor, subject to court approval, to reject the Aloha Hawaii agreement with the understanding that Aloha would not file a claim for any damages sustained as a result of such rejection. Aloha contends that had it been aware of the debtor's allegedly fraudulent scheme it would have defended the debtor's adversary proceeding and would have filed a counterclaim for damages arising out of the debtor's allegedly fraudulent conduct. This counterclaim would also have formed the basis for the assertion of a claim in the debtor's reorganization case. Aloha never filed a claim in this case, notwithstanding the Bar order dated November 1, 1984, which barred all prepetition claims filed after February 1, 1985.

Aloha's position is flawed because its proposed plenary action or counterclaim is foreclosed as a result of 11 U.S.C. § 1141(d)(1)(A), which provides that the confirmation of a plan of reorganization discharges the debtor from preconfirmation debts. Aloha argues that its claim against the debtor should not be discharged because of the exception in 11 U.S.C. § 1141(d)(3)(C) which blocks a post-confirmation discharge if;

(C) the debtor would be denied a discharge under section 727(a) of this title if the case were a case under chapter 7 of this title.

Aloha believes that its alleged prepetition claim would survive under 11 U.S.C. § 727(a)(4)(C), because;

the debtor knowingly and fraudulently, in or in connection with the case—

(C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; ...

Aloha's reference to 11 U.S.C. § 727(a)(4)(C) is without merit. This section tracks the language of the sixth paragraph in 18 U.S.C. § 152 which relates to the bankruptcy crimes of bribery or extortion. Aloha's papers do not even hint at any criminal conduct on the debtor's part. Moreover, the debtor's confirmed plan of reorganization does not provide for a liquidation of the debtor's property as required under 11 U.S.C. § 1141(d)(3)(A), nor will the debtor cease engaging in business after the consummation of its plan as called for under 11 U.S.C. § 1141(d)(3)(B). Hence, Aloha's search for an exception to the debtor's discharge following confirmation of its plan, is unpersuasive. As long as the order of confirmation stands, Aloha is barred from asserting any claim that arose before the date of such confirmation.

## REVOCATION OF CONFIRMATION FORECLOSED

■ The gist of Aloha's motion is that it now wishes to present evidence of fraud or other misconduct attributable to the debtor which would support a nondischargeable preconfirmation claim against the debtor. To accomplish this goal Aloha would have to revoke or set aside the confirmation order which discharged any such claim. Manifestly, fraud, misrepresentation, or other misconduct of an adverse party will support relief from a final judgment or order in accordance with Fed.R. Civ.P. 60(b)(3). A confirmation of a Chapter 11 plan is equivalent to a final judgment. *Bizzell v. Hemingway*, 548 F.2d 505, 507 (4th Cir.1977); *In re Emergency Beacon Corporation*, 48 B.R., 356, 359, 13 B.C.D. 204, 205 (Bankr.S.D.N.Y.1985). However, 11 U.S.C. § 1144 provides that an order of confirmation may be revoked "if and only if" such order was procured by fraud. As stated in 3 W. Norton, Bankruptcy L. & Prac. § 65.09 (1986 ed.): "Fraud is the sole ground for revoking a confirmation." In accordance with Bankruptcy Rule 9024, which makes Fed.R. Civ.P. 60 applicable in a bankruptcy case, a complaint to revoke an order of confirmation in a Chapter 11 case may be filed only pursuant to 11 U.S.C. § 1144, and only within the time allowed by § 1144, namely, at any time before 180 days after the date of the entry of the order of confirmation. Thus, fraud in the procurement of a confirmed Chapter 11 plan of reorganization is the sole ground for revoking the confirmation order, and this issue must be raised by a party in interest within six months after the entry of the confirmation order. *Hotel Corporation of the South v. Rampart, 920, Inc.*, 46 B.R. 758, 770–71, (E.D.La. 1985) *aff'd* 781 F.2d 901 (5th Cir.1986); *See In re Emergency Beacon Corporation*, 48 B.R. at 364, 13 B.C.D. at 209.

■ In the instant case, the confirmation order was entered on December 20, 1985. The last day to file a motion to revoke the confirmation order was June 18, 1986. Aloha's motion, dated June 26, 1986, was filed with this court on June 30, 1986, twelve days after the 180 day deadline for filing motions to revoke the confirmation. Moreover, Aloha's motion does not even refer to § 1144, nor does it seek to revoke the order of confirmation. Aloha's motion merely requests relief from the terms and obligations set forth in the stipulation dated July 17, 1985, which was "so ordered" by the court on September 6, 1985.

■ The second portion of Aloha's motion seeks relief from the stay contained in the confirmation order with respect to preconfirmation claims so as to enable Aloha to join the debtor as a party in a plenary suit which Aloha intends to commence with respect to the debtor's alleged preconfirmation fraud and misconduct. This point is academic because Aloha's preconfirmation claims against the debtor were discharged pursuant to 11 U.S.C. § 1141(d)(1).

## CONCLUSIONS OF LAW

1. Aloha has failed to sustain its burden of establishing grounds under Fed.R.Civ.P. 60(b)(1), (2), or (3) for relief from the terms and obligations set forth in the stipulation dated July 17, 1985, which was "so ordered" by this court on September 6, 1985.

2. Aloha has not timely moved for a revocation of the order confirming the debtor's Chapter 11 plan, which was entered on December 20, 1985 nor, has Aloha alleged or established as required under 11 U.S.C. § 1144, that such order of confirmation was procured by fraud.

3. Aloha's motion for relief from the stay contained in the order confirming the debtor's Chapter 11 plan so as to enable Aloha to commence a plenary suit against the debtor for preconfirmation fraud and misconduct is denied because any such claims were discharged pursuant to 11 U.S.C. § 1141(d)(1).

SETTLE ORDER on notice.