**In re WILLS MOTORS, INC., Debtor.**

**Bankruptcy No. 91 B 20690.**

United States Bankruptcy Court,
S.D. New York.

Nov. 21, 1991.

Fox, Bennett & Türner, New York City (Charles D. Bock, of counsel), for SAAB Cars, USA, Inc.

Michael R. Gottlieb, Middletown, N.Y., for Wills Motors.

Winick & Rich, New York City (Jonathan Flaxer, of counsel), for Barclays Bank.

Teitelbaum & Borges, Great Neck, N.Y. (J. Ted Donovan, of counsel), for Creditors' Committee.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

SAAB Cars U.S.A., Inc. ("SAAB"), a franchisor of the Chapter 11 debtor, has moved under Federal Rules of Civil Procedure 55(c) and 60(b) for an amendment of this court's previous order under 11 U.S.C. § 365, which authorized the debtor to assume and assign its SAAB and Volvo automobile dealer franchise agreements to a third party. The basis for SAAB's objection is that the City of Yonkers, New York is "a disadvantageous location for a SAAB dealership." The Yonkers Chamber of Commerce has not been given notice of SAAB's motion.

On November 6, 1991, this court issued two orders in this case following full evidentiary hearings. One order denied the motion made by Volvo North American Corporation ("Volvo") for relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1). The other order authorized the Chapter 11 debtor, Wills Motors, Inc., to assume and assign to Mr. Leon Geller ("Geller"), pursuant to 11 U.S.C. § 365, two separate automobile dealer franchise agreements between the debtor as franchisee and Volvo and SAAB as franchisors. SAAB was given notice of the debtor's motion under 11 U.S.C. § 365 and did not object to the motion nor did it appear at the evidentiary hearing held on October 18, 1991. SAAB allowed Volvo to sit in the driver's seat and present a defense in opposition to the debtor's motion.

After the close of the hearing, the court, ruling from the bench, granted the debtor's motion to assume and assign its Volvo and SAAB franchise agreements. The court also granted the debtor's motion under 11 U.S.C. § 363 to sell most of its physical assets to Geller. However, there was a dispute at the October 18, 1991 hearing among competing bidders for the debtor's franchises. Accordingly, the court set another hearing on November 6, 1991, to allow the debtor an opportunity to determine if a higher and better bid was available. At the November 6, 1991 hearing, no higher bid was available, whereupon the court entered the order previously submitted by the debtor which authorized the sale of assets under 11 U.S.C. § 363 and the debtor's assumption and assignment of the Volvo and SAAB franchises to Geller pursuant to 11 U.S.C. § 365.

SAAB did appear at the November 6, 1991 hearing with respect to the competitive bids and stated that it opposed the debtor's transfer of the SAAB franchise on the grounds that Yonkers was "a disadvantageous location for a SAAB dealership" and SAAB had sent the debtor a so-called non-perpetuation letter to that effect. The court replied that this was a matter for another day. SAAB reasons that its day has now arrived and seeks an order amending the November 6, 1991 order, which authorized the debtor to assume and assign its Volvo and SAAB automobile franchise agreements to Geller, so as to delete all references to SAAB and its automobile dealer franchise agreement with the debtor.

The debtor opposes SAAB's motion on the ground that SAAB has filed a notice of appeal with respect to the November 6, 1991 order and therefore is barred from objecting to the order. The debtor also argues that SAAB was given appropriate notice of the debtor's motion and chose not to attend the October 18, 1991 hearing because SAAB was satisfied to allow Volvo to present evidence in opposition. SAAB now says that its attorney made a mistake and should have appeared for the evidentiary hearing.

Barclays Bank of New York, N.A. ("Barclays"), a secured claimant, joined the official unsecured creditors' committee in opposition to SAAB's motion. Barclays has also cross-moved for the imposition of sanctions against SAAB pursuant to Federal Rule of Civil Procedure 11 and Bankruptcy Rule 9011, for the reason that SAAB's motion has no possible or colorable basis or grounds to sustain it.

## DISCUSSION

### LOST IN YONKERS

The deceased comedian, W.C. Fields, chose for his tombstone epitaph: "On the whole, I'd rather be in Philadelphia." In similar fashion, SAAB gives as a reason for its motion that it would rather be located in any city other than Yonkers.

SAAB relies upon Federal Rules of Civil Procedure 55(c) and 60(b)(6). Rule 55(c), as incorporated in Bankruptcy Rule 7055(c), provides for setting aside defaults in the following language:

> For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set aside in accordance with Rule 60(b).

Fed.R.Bankr.P. 7055(c). Rule 60(b)(6), as adopted by Bankruptcy Rule 9024, affords relief from judgments or orders on the catchall ground of "any other reason justifying relief from the operation of the judgment," namely a ground not expressly delineated in the first five subsections of Rule 60(b).

Bankruptcy Rule 7055 is expressly made applicable to contested matters pursuant to Bankruptcy Rule 9014. A motion to assume or reject an executory contract is treated as a contested matter by Bankruptcy Rule 6006(b), which provides that Bankruptcy Rule 9014 shall govern in such case. Accordingly, good cause must be shown by SAAB to set aside the order which this court entered on November 6, 1991 permitting the debtor to assign its automobile dealership franchises to SAAB and Volvo.

■ As a preliminary matter, the debtor argues that SAAB's notice of appeal, which was filed with this court, divested the court of authority to entertain its motion under Rules 55(c) and 60(b)(6). The court does not find this argument persuasive. The United States Supreme Court has held that motions to reconsider, to vacate, to set aside, or to reargue adverse judgments captioned under Federal Rules of Civil Procedure 55, 59, or 60 result in nullifying a previously filed notice of appeal until such post-judgment motions are decided.

*Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982). *See also* 9 Moore's Federal Practice ¶ 203.11, at 3–50 to 3–51 (2d ed. 1991). This holding has been codified in Bankruptcy Rule 8002(b) which declares that a notice of appeal filed before the disposition of a motion seeking amendment or vacation of an order or a new trial is tolled and of no effect until the entry of the order denying the motion, at which time a new notice of appeal must be filed. Therefore, SAAB's previously filed notice of appeal does not divest this court of authority to determine SAAB's post-judgment motion.

### THE SAAB STORY

■ SAAB asserts that its general counsel purposely failed to have SAAB attend the evidentiary hearing on August 18, 1991, when the debtor's motion to assume and assign its SAAB and Volvo franchises to Geller was heard and granted. SAAB now asks the court to excuse the neglect and permit it to establish the reasons why SAAB should be deleted from the November 6, 1991 order which reflects the granting of the debtor's motion at the conclusion of the October 18, 1991 evidentiary hearing.

In support of its motion, SAAB asserts it has a meritorious defense to the debtor's assumption and assignment motion. It is argued that under 11 U.S.C. § 365(c)(1)(A), the SAAB franchise agreement may not be transferred when SAAB refuses to consent to such transfer if applicable law allows it to veto the transfer. The relevant language in 11 U.S.C. § 365(c)(1)(A) reads as follows:

> (c) The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—
>
> (1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in

possession whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties....

11 U.S.C. § 365(c)(1)(A).

SAAB observes that under applicable Connecticut law, which expressly governs the terms and conditions of the franchise agreement, an automobile franchisor may veto an assignment by an automobile dealer franchisee as long as the dealer does not "[u]nreasonably withhold consent to the sale, transfer, or exchange of the franchise to a qualified buyer capable of being licensed as a dealer." Conn.Gen.Stat.Ann. § 42–133cc(10). Additionally, pursuant to paragraph number 24 of the agreement between SAAB and the debtor, there is a restriction on the debtor's sale of its assets and the franchise, but SAAB agrees it will not unreasonably withhold its consent. SAAB believes that it has sound reasons for objecting to the assignment in question because it would prefer not to have a franchise located in Yonkers. In support of its position SAAB cites *In re Pioneer Ford Sales, Inc.*, 729 F.2d 27 (1st Cir.1984), for the proposition that when applicable non-bankruptcy state law permits a franchisor to veto an assignment of an automobile dealer franchise contract if the franchisor does not act unreasonably in refusing to consent to the assignment, the franchisor may then rely on 11 U.S.C. § 365(c)(1)(A) to block the assignment. This is so because 11 U.S.C. § 365(c)(1)(A) is an exception to the more general provision in 11 U.S.C. § 365(f)(1), which allows a trustee or debtor in possession to assign executory contracts and unexpired leases even if the contract or lease expressly says that it forbids assignment. *Id.* at 29.

SAAB's reliance on the *Pioneer Ford* case is misplaced because the First Circuit concluded that the assignee's inability to meet the franchisor's capital requirements provided reasonable grounds for objecting to a franchise transfer. The court expressed this point as follows:

Inability to meet capital requirements, as revealed here, would seem to provide reasonable grounds for objecting to a franchise transfer *a fortiori*. If not, a manufacturer would have to allow the transfer of its franchise to virtually any auto dealer.

*Id.* at 30.

In the instant case, this court found that Geller, the assignee, was an experienced and highly regarded automobile dealer with substantial financial ability to satisfy the standards required under the debtor's franchise agreements. Indeed, there were no objections raised at the hearing as to his capacity to perform the debtor's franchise duties. Volvo, the debtor's other franchisor as much as conceded this point. Hence, the proposed assignee's negative financial condition in the *Pioneer Ford* case, which supported the franchisor's veto of the debtor's assignment of the franchise, does not apply in this case. In the instant case, SAAB granted the automobile dealer franchise to the debtor when the debtor was located in Yonkers. That SAAB would now prefer the assignee to move the debtor's business out of Yonkers before it will consider consenting to the debtor's assignment is not a reasonable basis for withholding consent.

There is also another reason for concluding that 11 U.S.C. § 365(c)(1) does not bar an assignment of the debtor's franchises in this case. As Chief Judge Conrad Duberstein correctly noted, this section applies not only to personal service contracts, but also "includes situations where state or federal law can be said to bar assignment." *In re Yachthaven Restaurant, Inc.*, 103 B.R. 68, 78 (Bankr.E.D.N.Y.1989). Thus, if under applicable state or federal law the debtor may not delegate its duties to an assignee, the debtor will be barred from assigning an executory contract or unexpired lease. In *Pension Benefit Guaranty Corp. v. Braniff Airways, Inc. (In re Braniff Airways, Inc.)*, 700 F.2d 935 (5th Cir.1983), a federal law specifically barred the assignment of airport leases without the approval of the Federal Aviation Administration, even if all other parties consented. The Fifth Circuit ruled that applicable federal law made the airport leases unassignable, notwithstanding 11 U.S.C. § 365(f)(1).

308

In the instant case, Connecticut law does not bar automobile dealers from assigning their franchises. The automobile franchisor is simply given the opportunity to withhold consent to the assignment, provided that such consent is not withheld unreasonably. Conn.Gen.Stat.Ann. § 42–133cc(10). This law is similar to the consent requirement contained in the franchise agreement with SAAB. Manifestly, this statute cannot be described as an anti-assignment law which triggers the application of 11 U.S.C. § 365(c)(1). Assignments of automobile franchise agreements are permitted under Connecticut law, if the parties consent, or if the franchisor acts unreasonably in withholding consent. In the instant case, SAAB's objection to the assignment of the debtor's franchise on the ground that the assignee, Geller, will continue the business in Yonkers, is unreasonable.

SAAB has not established that under applicable nonbankruptcy law it may veto an assignment of its automobile dealer franchise agreement unless the proposed assignee moves to a city other than where the current franchisee is located. Accordingly, the exception provided in 11 U.S.C. § 365(c)(1) has not been met, with the result that the general provision in 11 U.S.C. § 365(f)(1) applies and SAAB's belated objection to the assignment does not constitute a recognizable veto. Therefore, even if SAAB had not failed to attend the evidentiary hearing, its objection to the debtor's assignment of the automobile dealer franchise on the ground that Yonkers is "a disadvantageous location for a SAAB dealership," would not have barred the assignment in the light of 11 U.S.C. § 365(f)(1). Hence, SAAB has not shown that it has a meritorious defense which would have prevailed had SAAB not defaulted in attending the hearing.

### Federal Rules of Civil Procedure 55(c) and 60(b)

Even if SAAB possessed a meritorious defense to the debtor's motion to assume and assign its franchise agreements, SAAB is, nonetheless, confronted with the fact that its general counsel purposely defaulted when he failed to have SAAB attend the evidentiary hearing with respect to the debtor's motion. A meritorious defense might be appropriate for purposes of appeal. However, SAAB's instant post-judgment motion is not the same as an appeal. SAAB must satisfy the specific requirements prescribed under Rules 55(c) and 60(b)(6) of the Federal Rules of Civil Procedure, as adopted by Bankruptcy Rules 7055 and 9024, respectively. Rule 55(c), which requires a showing of good cause to amend an order or judgment, incorporates by reference Rule 60(b), which requires "any other reason justifying relief from the operation of the judgment" exclusive of the grounds expressed in the first five subsections of Rule 60(b). Thus, both Rule 55(c) and Rule 60(b) require the moving party to show good cause for the requested post-judgment relief. Therefore, the court will combine the two overlapping Rules and will consider SAAB's motion in the context of whether good cause exists pursuant to Rule 60(b)(6) for amending the November 6, 1991 order.

Relief from a judgment under Federal Rule of Civil Procedure 60(b) is a remedy of equitable origin which gives a court discretion to rescind or amend the final judgment. *In re Chipwich*, 64 B.R. 670, 675 (Bankr.S.D.N.Y.1986); 11 C. Wright and A. Miller Federal Practice and Procedure §§ 2851 and 2857 (1973). Rule 60(b) is the only vehicle, other than an appeal, that will disturb the *res judicata* effect of a judgment. *House v. Secretary of Health and Human Services*, 688 F.2d 7, 9 (2d Cir.1982).

Specifically, Rule 60(b)(6), upon which SAAB relies, gives a court broad authority to grant a party relief from a final judgment "provided that the motion is made within a reasonable time and is not premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5)." *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 863, 108 S.Ct. 2194, 2204, 100 L.Ed.2d 855 (1988); *Nemaizer v. Baker*, 793 F.2d 58, 63 (2d Cir.1986) ("As (b)(6) applies only when no

other subsection is available, grounds for relief may not be mistake, inadvertence, surprise or excusable neglect."). Moreover, Rule 60(b)(6) provides federal courts with authority "adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice." *Klapprott v. United States*, 335 U.S. 601, 614–15, 69 S.Ct. 384, 390, 93 L.Ed. 266 (1949). However, such authority should only be exercised under *"extraordinary circumstances,"* *Ackermann v. United States*, 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950) (emphasis added), and may not be used as a substitute for appeal. *House v. Secretary of Health and Human Services*, 688 F.2d at 9. In fact, the burden to obtain Rule 60(b) relief is heavier than if a party lost on the merits and failed to appeal. *Nemaizer*, 793 F.2d at 63.

> The Second Circuit has made clear that an attorney's failure to evaluate carefully the legal consequences of a chosen course of action provides no basis for relief from a judgment.

*Id.* at 62. *See Traveltown, Inc. v. Gerhardt Investment Group*, 577 F.Supp. 155, 157 (N.D.N.Y.1983). In *Nemaizer*, an employee entered into a stipulation with his employer to dismiss an action "with prejudice." The employee sought relief from the order dismissing the action pursuant to Rule 60(b) because the stipulation contemplated only a pending state claim, not a federal claim. The Second Circuit said:

> The scope of (b)(6) has been variously interpreted. *See, e.g.,* [*United States v.*] *Karahalias*, 205 F.2d [331] at 333 [2d Cir.1953] (L. Hand, J.) ("extremely meager"); *accord Rinieri* [*v. News Syndicate Co.*], 385 F.2d [818] at 822 [2d Cir. 1967]; *cf. United States v. Cirami*, 563 F.2d 26, 32 (2d Cir.1977) (quoting 7 *Moore's Federal Practice*, ¶ 60.27[2] at 315 (2d ed. rev. 1975)) ("a grand reservoir of equitable power"); *accord Dunlop v. Pan American World Airways*, 672 F.2d 1044, 1051 (2d Cir.1982). Thus whether the water in the reservoir is scant or grand, is far from clear. Nonetheless, it was plainly not intended to apply in the circumstances presented here. To grant relief under this subsection would be to

accept the proposition that when counsel's conduct shows *gross* negligence relief to a client may be afforded under Rule 60(b)(6). Although some courts have embraced that view, *see L.P. Steuart, Inc. v. Matthews*, 329 F.2d 234, *cert. denied*, 379 U.S. 824, 85 S.Ct. 50, 13 L.Ed.2d 35 (1964), we have consistently indicated a reluctance to do so. [*United States v.] Cirami*, 535 F.2d [736] 740–41 [2nd Cir.1976]; *Schwarz* [*v. United States*], 384 F.2d [833] at 835 [2d Cir. 1967].

*Nemaizer*, 793 F.2d at 63.

In the light of the well-settled case law with respect to Rule 60(b) motions, it is clear that SAAB has not established good cause for amending this court's order dated November 6, 1991.

### *Sanctions*

■ Sanctions may be imposed under Bankruptcy Rule 9011, which adopts Federal Rule of Civil Procedure 11, when it appears that a pleading has been interposed for an improper purpose, or where after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well-grounded and warranted by existing law. *Eastway Const. Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir.1985), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987). If this court applied a subjective test exclusively, it would follow that SAAB's counsel should be excused because he relied on cases in the First Circuit in the belief that Connecticut was in the First Circuit. The court disabused him of this error when SAAB's motion was heard on November 20, 1991. Nonetheless, the First Circuit's decision in *In re Pioneer Ford Sales, Inc.*, 729 F.2d 27 (1st Cir.1984), which was cited by SAAB, does not require any amendment of this court's November 6, 1991 order authorizing the debtor's assumption and assignment of its franchises.

■ From an objective standpoint, it cannot be concluded that after having purposely defaulted in appearing at the evidentiary hearing on October 18, 1991, counsel for SAAB should simply sit back and accept the consequences of such default, es-

pecially when SAAB believed that a continuation of the SAAB franchise in Yonkers should be a reasonable ground for vetoing the debtor's assignment. SAAB and its counsel should not be sanctioned for attempting an approach which was intended to relieve them of their default. Therefore, Barclay's motion for sanctions is denied.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(A) and (N).

2. The notice of appeal which SAAB filed with this court does not preclude this court from entertaining SAAB's motion under Bankruptcy Rules 7055(c) and 9024(c).

3. SAAB has failed to present any evidence of good cause to set aside the entry of this court's order dated November 6, 1991, as required by Bankruptcy Rule 7055(c).

4. SAAB has failed to establish that it has a meritorious defense to the debtor's motion to assume and assign its automobile franchises to Geller. Such failure is an additional reason why SAAB should not be relieved from its knowing default with respect to the evidentiary hearing under 11 U.S.C. § 365.

5. SAAB's motion for relief from this court's order dated November 6, 1991, is denied.

6. Barclay's motion for sanctions against SAAB pursuant to Federal Rule of Civil Procedure 11 and Bankruptcy Rule 9011 is denied.

SETTLE ORDER in accordance with the foregoing.