**In re PAN AM CORPORATION, et al., Debtors.**

**DELTA AIR LINES, INC., Appellant,**

v.

**PAN AM CORPORATION, et al., and the Official Committee of Unsecured Creditors of Pan Am Corporation, et al., Appellees.**

Bankruptcy Nos. 91 B 10080 (CB) to 91 B 10087 (CB).

No. 93 Civ. 5763 (RPP).

United States District Court, S.D. New York.

Dec. 28, 1993.

Stroock & Stroock & Lavan by Lawrence M. Handelsman, Davis Polk & Wardwell, New York City, for appellants.

Cleary, Gottlieb, Steen & Hamilton by George Weisz, David Brodsky, Marcus Montgomery Wolfson & Burton P.C. by Neil P. Forrest, Robert J. Lanza, New York City, for appellees.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

This is an appeal by Delta Airlines of a Bankruptcy Court order filed May 20, 1993. In that order Bankruptcy Judge Blackshear consolidated for trial Delta's motion for enforcement of the Bankruptcy Court's Debtor-in-Possession Financing Orders ("DIP orders") and Pan Am's cross-motion for modification of the DIP orders with an adversary proceeding in the Pan Am Corporation ("Pan Am") bankruptcy entitled *Pan Am Corp. v. Delta Air Lines, Inc.*, Adv.Proc. No. 91–6626A (CB) ("the Adversary Proceeding").

## *BACKGROUND*

During the Chapter Eleven proceeding, preceding the present Chapter Seven proceeding, Delta agreed, in connection with its purchase of certain of Pan Am's assets and its participation in Pan Am's proposed plan of reorganization, to provide Pan Am with debtor-in-possession (DIP) financing. The financing was provided pursuant to four DIP orders approved and entered by the Bankruptcy Court after evidentiary hearings held on notice to all interested parties to determine if the DIP financing liens were fair and negotiated in good faith. Each of the DIP orders authorized Pan Am to borrow funds pursuant to a loan agreement between Pan Am and Delta and amendments thereto (the "Loan Agreement"). Under the Loan Agreement the loans became due on Decem-

ber 5, 1991 or on the Plan of Reorganization's effective date if a Plan of Reorganization for Pan Am was confirmed before December 5, 1991.[1] *See* Ex. E to Handelsman's Aff., p. 45 (the Loan Agreement between Pan Am and Delta as of October 21, 1991). When the DIP orders were entered some of Pan Am's creditors filed notices of appeal challenging the DIP orders. The District Court affirmed the DIP orders or, alternatively, dismissed the appeals as moot. *Evergreen Int'l v. Pan Am Corp. (In re Pan Am Corp.),* 1992 WL 154200 (Bankr.S.D.N.Y.1992) (McKenna, J.). The appeal to the Second Circuit of the affirmance by Judge McKenna was withdrawn by stipulation on November 30, 1992. *See* Ex. H to Handelsman's Aff. On February 24, 1993, Delta moved in Bankruptcy Court to have the DIP orders enforced. Pan Am and its Creditors Committee opposed enforcement of the DIP orders on the grounds that Delta's claim for enforcement of the DIP orders should be litigated in the Adversary Proceeding, arguing that the funds at issue were best left in Pan Am's possession under the supervision of the Bankruptcy Court. Pan Am and its Creditors Committee also filed a cross-motion to modify the enforcement provisions of the DIP orders to make the DIP orders enforceable only after the resolution of the Adversary Proceeding. No claim was made that payment of the DIP orders would interfere with the administration of Pan Am's estate.[2] By its order of May 20, 1993, the Bankruptcy Court consolidated Delta's motion to have the DIP orders enforced with the Adversary Proceeding.

The Adversary Proceeding was commenced by Pan Am and its Creditors Committee filing a complaint against Delta on March 6, 1992. The complaint seeks damages for Delta's allegedly wrongful failure to participate in Pan Am's reorganization, challenges Delta's right to receive repayment of

---

1. Pursuant to the authority of the DIP orders Pan Am borrowed $115 million from Delta.

2. At oral argument it was acknowledged that there are sufficient funds in the Pan Am estate to pay administrative expenses and claims of equal or higher priority to Delta's DIP claims. Pan Am and its Creditors Committee argue, however, that

if Delta is repaid its DIP advances Delta may not be able to satisfy a judgment in the Adversary Proceeding. This likelihood was not given as a reason by Judge Blackshear and raises the question whether in that event such funds should not be held by Delta subject to the claims of all its creditors, not just Pan Am.

the DIP financing, and requests avoidance of Delta's liens and equitable subordination of the DIP financing. Delta filed a counterclaim under Fed.R.Civ.P. 13 for enforcement of the DIP orders as part of the Adversary Proceeding.[3]

Delta appeals the May 20, 1993 order of the Bankruptcy Court on the grounds that the order modified the DIP orders without authority under Fed.R.Civ.P. 60(b)(5) or (6) or under Bankruptcy Code § 105(a). Delta seeks a reversal of the May 20, 1993 order and a ruling that Pan Am must immediately repay Delta the $115 million, plus interest, due and owing under the DIP orders. Pan Am opposes this motion arguing that the Bankruptcy Court properly consolidated the motion for enforcement of the DIP orders with the Adversary Proceeding under Fed. R.Civ.P. 42(a), and properly modified the DIP orders under Fed.R.Civ.P. 60(b)(5) or 60(b)(6) or Bankruptcy Code § 105(a).

## DISCUSSION

### I. The Bankruptcy Court's Order of May 20, 1993

In the order of May 20, 1993 and in the transcript of the May 6, 1993 hearing preceding that order, Judge Blackshear did not articulate his reasons for deciding to consolidate the motion with the Adversary Proceeding. During oral argument he indicated only that he was consolidating the motion under Bankruptcy Rule 7042 which makes Fed. R.Civ.P. 42 applicable to adversary proceedings. At the hearing on the motion for leave to appeal, Judge Kram found that since Judge Blackshear's order was based on Rule 42(a) he would have had to make a finding that he had the power to modify the DIP orders under Rule 60(b) or Section 105(a) of

the Bankruptcy Code. Judge Kram concluded that:

> By holding that the determination of the motion and the cross-motion requires a full and adequate evidentiary hearing the bankruptcy court necessarily concluded that the debtor in possession orders were subject to modification under federal Rule 60(b)(5) or 6 or Section 105(a) of the bankruptcy code.

Transcript of oral argument held on June 22, 1993, at p. 19. Judge Kram found that "there are substantial grounds for differences of opinion as to whether the DIP orders may be modified pursuant to those sections." *Id.* at 20.

### II. Fed.R.Civ.P. 42(a)

Fed.R.Civ.P. 42(a) enables courts to consolidate actions when they involve "a common issue of law or fact." Pan Am argues that the Adversary Proceeding and the motion to enforce the DIP orders involve common issues of law and fact and that the Bankruptcy Court in its discretion decided to consolidate the two matters. Delta states that no issues of fact remain as to the DIP orders, that those orders are final orders and that as a matter of law Delta is entitled to be paid now. Moreover, Delta argues, the Bankruptcy Court's decision to consolidate the proceedings required it to reach the conclusion that the DIP orders were modifiable because by not ordering the payment of the monies lent pursuant to the DIP orders the terms of the DIP orders were modified. A review of the DIP orders demonstrates that each approved the terms of the Loan Agreement requiring payment on December 5, 1991 and that no provision was made for their modification.[4] The DIP orders are fi-

---

3. Pan Am claims that Delta's filing of a counterclaim was compulsory under Fed.R.Civ.P. 13(a). Pan Am disagrees. This issue was not raised below and because it is not a dispositive issue it will not be discussed herein. *Kraebel v. New York City Dep't of Hous. Preservation & Dev.*, 959 F.2d 395, 401 (2d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 326, 121 L.Ed.2d 245 (1992).

4. Each DIP order provides that:
 "7. The terms and conditions of the Loan Agreement, are hereby approved ..."
 "9. ... Delta, pursuant to Section 364(c) of the Code, is hereby granted ... a valid, enforceable

and perfected security interest in and lien upon all the Collateral of the Borrowers junior to [certain liens]"
 "12. In furtherance of the rights of Delta to sell and obtain the proceeds of Collateral ... this Court shall, upon the request of Delta provide whatever assistance shall be necessary and within its power in order to facilitate such action ..."
 "16. ... All advances under the Loan Agreement are made in reliance upon this Order, and therefore the indebtedness evidenced by such advances prior to the effective date of any stay,

nal orders of the Bankruptcy Court as they have been appealed and affirmed by a district court and a stipulation was entered withdrawing the appeal from the Second Circuit.[5] Accordingly, consolidation of the motion to enforce the DIP orders with the Adversary Proceeding could only be proper if the DIP orders were subject to modification under Fed.R.Civ.P. 60(b)(5)[6] or 60(b)(6) or Bankruptcy Code § 105(a).

*III. Section 105(a) of the Bankruptcy Code*

 Section 105(a) authorizes bankruptcy courts to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." *See Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939). Thus bankruptcy courts can take equitable steps not specifically authorized by the Bankruptcy Code. *See Faircloth v. Bouchard (In re International Gold Bullion Exchange, Inc.),* 53 B.R. 660, 667 (Bankr.S.D.Fla.1985). However, "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, 108 S.Ct. 963, 969, 99 L.Ed.2d 169 (1988). Thus a "bankruptcy court has no equitable power to deprive creditors of rights or remedies available to them under the Code." *In re SPM Mfg. Corp.,* 984 F.2d 1305, 1311 (1st Cir. 1993).

 In this case, Pan Am claims that the bankruptcy court had authority under Section 105(a) to modify the DIP orders to prevent the depletion of the property of the estate. Pan Am cites *Willis v. Celotex Corp.,* 978 F.2d 146 (4th Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 1846, 123 L.Ed.2d 470 (1993), a case in which the Fourth Circuit decided that Section 105(a) gave a bankruptcy court the authority to grant a temporary stay from execution on a multitude of supersedeas bonds posted to secure asbestos-related personal injury judgments against Celotex. In *Willis,* the bankruptcy court, at an early stage in the proceeding, used its equitable power under Section 105(a) to stay the enforcement of all supersedeas bonds while it evaluated the underlying tort judgments secured by the supersedeas bonds to determine whether any portion of the judgments were voidable. This case differs from *Willis* because the Bankruptcy Judge did not articulate any reasons for using his discretionary power under Section 105(a), thus this Court cannot evaluate his decision.[7] *See* discussion *infra* of *In re Emergency Beacon,* 666 F.2d 754 (2d Cir.1981) (affirming bankruptcy order which vacated a prior bankruptcy court order based on bankruptcy judge's findings that he never intended to authorize the issuance of the certificate ·of indebtedness).

 Even if Judge Blackshear had articulated his reasons for using Section 105(a) to consolidate the motion to enforce the DIP orders with the Adversary Proceeding, modification of the DIP orders would not be appropriate unless it was proper under Rule 60(b). The Second Circuit has stated that "[t]he amenability of a final order to be subject to modification by the bankruptcy court itself, however, is governed by Bankruptcy Rule [9024], which incorporates Fed.R.Civ.P. 60." *In re Emergency Beacon,* 666 F.2d 754, 758 (2d Cir.1981). *See, e.g., In re Moody,* 849 F.2d 902, 906 (5th Cir.1988), *cert. denied,* 488 U.S. 967, 109 S.Ct. 493, 102 L.Ed.2d 530 (1988) (holding that bankruptcy courts lack

---

modification or vacation of this Order cannot (i) be subordinated, (ii) lose its super-priority status or (iii) be deprived of the benefit of the status of the liens granted to Delta, as a result of any subsequent order in the Case.
*See* Handelsman's Aff. Exhs. A–D at ¶¶ 7, 9, 12 and 16.

**5.** The standard for finality for bankruptcy orders are those that "finally dispose of *discrete disputes within the larger case.*" *In re Sonnax Industries, Inc.,* 907 F.2d 1280, 1283 (2d Cir.1990) (quoting *In re Saco Local Dev. Corp.,* 711 F.2d 441, 444 (1st Cir.1983)) (emphasis in original).

**6.** Bankruptcy Rule 9024 makes Fed.R.Civ.P. 60 applicable to bankruptcy cases except in special circumstances not present in this case.

**7.** Judge Blackshear did not state that he was invoking his powers under Section 105(a) in the May 20, 1993 order or at the May 6, 1993 hearing, nor, from oral argument did it appear likely that he was invoking his powers to prevent depletion of the property of the estate.

672

"the power to set aside money judgments which have become final, other than on the grounds provided by Fed.R.Civ.P. 60"). Although the court in *Emergency Beacon* did not address the discretionary powers given to bankruptcy courts by Section 105(a), the discussion in *In re Emergency Beacon* demonstrates that Rule 60, which allows final orders to be modified, is the basis upon which bankruptcy courts should exercise their discretionary power to grant relief from final orders. If the Bankruptcy Court was relying on any subdivision of Rule 60(b), including Rule 60(b)(6) ("any other reason justifying relief"), to modify the DIP orders it should have articulated that reason. Without stating such a reason the Bankruptcy Court should not have ordered consolidation and hence modification of the DIP orders because the Bankruptcy Court did not have power to modify the DIP orders except for the reasons listed in Fed.R.Civ.P. 60(b).

■ Delta also argues that even if the Bankruptcy Court had broader authority under Section 105(a) to modify the DIP orders, such modification would deprive creditors of rights which are protected under Section 364(e). *See In re SPM Mfg. Corp., supra.* Section 364(e) protects DIP lenders who extend money in good faith from having the validity or priority of their loans overturned on appeal. The situation presented by this case is not covered by Section 364(e) because the validity or priority of the DIP orders were not modified on appeal but by the subsequent order of the Bankruptcy Judge. However, to allow the DIP orders, non-modifiable on their face, to be modified when contested claims are filed against the DIP lender subsequent to their issuance is inconsistent with the protection given to Delta as a DIP lender under Section 364(e). DIP financing in future Chapter 11 proceedings could be adversely affected if bankruptcy courts allow repayment to be delayed when new claims are filed against DIP lenders.

Pan Am argues that the Bankruptcy Judge had authority to enter the Consolidation Order pursuant to Rule 60(b)(5) or Rule 60(b)(6). Delta argues that the sections are inapplicable. Since the record does not demonstrate Judge Blackshear's reasons for delaying the DIP payments to Delta and because under *Emergency Beacon* such reasons should be articulated, this Court remands this case to the Bankruptcy Court for a statement of those reasons and for reconsideration of the order of May 20, 1993 in light of this opinion.

IT IS SO ORDERED.